THE STATE OF OHIO, APPELLANT, *v.* MARTIN, APPELLEE.

[Cite as *State v. Martin,* 103 Ohio St.3d 385, 2004-Ohio-5471.]

(No. 2003–0929—Submitted April 14, 2004—Decided October 27, 2004.)

LUNDBERG STRATTON, J.

{¶ 1} We are asked to decide what constitutes sufficient waiver of the accused's right to counsel under the Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution. In this case, because we find that the accused essentially proceeded pro se, without being sufficiently warned of the dangers of self-representation and without properly waiving his right to counsel, we affirm the judgment of the court of appeals.

{¶ 2} In 2001, the Cuyahoga County Grand Jury returned a ten-count indictment against defendant-appellee, Kyle Martin, charging him with attempted aggravated murder, kidnapping, three counts of conspiracy to commit aggravated murder, two counts of tampering with evidence, obstructing justice, complicity to commit aggravated murder, and tampering with records. Due to Martin's indigency, the trial court appointed counsel, David L. Grant. About six weeks later at a pretrial conference, Grant withdrew due to irreconcilable differences with Martin and scheduling problems.

{¶ 3} At a hearing on Grant's motion to withdraw as counsel, Martin indicated that he had filed "motions for respective counsel and co-counsel." When asked to clarify the meaning of the motion, Martin stated, "I filed a motion for co-counsel whereas I can do part of my representation on my own with the assistance of counsel."

{¶ 4} "THE COURT:  Are you making a request to represent yourself?

{¶ 5} "THE DEFENDANT:  Co-counsel, with the assistance of—

{¶ 6} "THE COURT:  If you want to represent yourself, you can.

{¶ 7} "THE DEFENDANT:  I want to be a part of that defense.  I don't want to be assigned."

{¶ 8} The court responded that it was going to appoint a public defender to represent Martin and granted David Grant's motion to withdraw.

{¶ 9} At a later hearing regarding speedy trial issues, the trial court inquired of the two public defenders what discussions had taken place with Martin regarding his legal representation.  Counsel Darin Thompson stated that it was his understanding that Martin would "actively participate at least to the extent of co-counsel if not taking over the matter himself."  The court then asked Martin, "Is it your intention, Mr. Martin, then to act as your own lawyer?"  Martin responded, "No, it is not, but that's my intention to participate as to doing all that I can to protect my rights as a citizen.  My Constitutional rights and to every right that I have.  Okay, that is what I'm doing.  I want to make sure that I am assured a fair trial.  I want to make sure that motions, defense motions, proper defense motions are filed.

{¶ 10} "* * *

{¶ 11} "I don't want to go in there pretending that I'm Perry Mason and I'm not.  I do need the support.  I'm not all-knowing with the law but I do know enough to know what kind of motion I want to file and what kind of motion does what, and I'm familiar—I will just say that."

{¶ 12} After counsel indicated that he found the situation to be awkward because he would not be in control of the case, the trial court told Martin, "You're putting these lawyers in a position where it doesn't appear that you're going to listen to them.  If they suggest to you that, for example, a motion be withdrawn, or that a motion isn't appropriate, whether the motion might raise some issues that, you know, for tactical or strategic reasons are not to be raised in the case.  So it sounds like you want to be your own attorney, sir?"  Martin replied, "That's not what I'm asking of the court."

{¶ 13} The trial court noted, "It is awkward to have both the lawyer and the client filing motions, arguing.  It's just very difficult to do, and I think it creates all kinds of ethical issues for lawyers, some of which Mr. Grant indicated arose during his representation, although he didn't discuss them with me."  Ultimately, the court reserved judgment on the representation issue until another pretrial conference.

{¶ 14} At the next pretrial conference, when asked about the nature of the representation and the relationship between counsel and Martin, counsel stated:

"[Martin] does wish to maintain a great deal of control as to the direction of the defense, that is, the defendant does himself. We have talked about what our role would be, what we perceive. We come [sic] to some loggerheads as to whether or not we would proceed as I may advise him, and he has maintained consistently that he wants to run the show basically." The trial court asked Martin, "[I]s that pretty accurate?" Martin replied, "No, it is not. * * * I have never made it known I want to run the show. I would like some control what's going on being I have more information involving the case then [sic] any other parties involved in the case. I've made several suggestions which were shot down by defense by way of an evidentiary hearing. I asked for a suppression hearing. I asked for an evidentiary hearing. I asked for several different avenues of defense which were totally shot down."

{¶ 15} The trial court stated: "Well, it sounds like you have disagreements and you want to run the case in a particular fashion and they're not agreeing with you on that and so you have a right to represent yourself, and in fact that's what I'm going to do is I'm going to permit you to represent yourself. Now I'll let counsel sit with you during the proceedings, and when you need their advice, you ask them for their advice but you're going to run your own defense because that's apparently what you're doing.

{¶ 16} "I find that you are a competent individual. You are articulate. You're able to address different aspects of this case. I would caution you against abandoning your lawyers but that's your choice. You will be free to represent yourself in this case. What I'm not going to have is your lawyers saying one thing and you saying another. That's not going to be helpful for the process and it certainly won't be helpful in the conduct of your trial in front of a jury, so you can be your own lawyer and do whatever you think is appropriate in representing yourself.

{¶ 17} "Now having said that I'm going to treat you like a lawyer. That is, I'm not going to give you any greater leeway because you're representing yourself then [sic] I would to a lawyer. If you make an objection and it's inappropriate, it will be overruled. If you file something that's inappropriate, I'll deal with it in that way. You'll have counsel with you during trial and during the balance of the proceedings. If you ask them for advice on an issue, they can give it to you, but they may make suggestions to you if they'd like but the fact of the matter is you're going to represent yourself which is apparently what you want to do although you don't want to say it. That's apparently what you want to do."

{¶ 18} Martin never signed a written waiver of his right to counsel.

{¶ 19} Prior to trial, the state dismissed the charges of tampering with evidence and tampering with records. In addition, the charge of conspiracy to commit aggravated murder was dismissed at the close of the state's case. At

trial, Martin made his own opening and closing statements. He himself conducted all examination and cross-examination of witnesses (other than himself). He filed a successful motion to dismiss the count of conspiracy to commit murder.

{¶ 20} The jury returned a verdict of not guilty of attempted aggravated murder, not guilty of the lesser included offense of attempted murder, and guilty of kidnapping. On appeal, the Eighth District Court of Appeals reversed the judgment of the trial court and remanded for retrial. The court held that Martin was inadequately advised about the perils of self-representation and that he was not advised at all about the charges he faced, the potential penalties, or his available defenses. In addition, the court held that the absence of a written waiver compelled reversal, especially considering that Martin never really made an affirmative choice to represent himself but rather chose what he thought to be the lesser of two evils in representing himself. A motion for stay of the court of appeals' judgment was granted pending the outcome of this case. *State v. Martin*, 100 Ohio St.3d 1468, 2003-Ohio-5772, 798 N.E.2d 404.

{¶ 21} This cause is now before us upon our acceptance of a discretionary appeal.

### Self–Representation

{¶ 22} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence." Similarly, the Ohio Constitution provides: "In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." Section 10, Article I, Ohio Constitution.

{¶ 23} But the United States Supreme Court has also recognized that the Sixth Amendment right to the assistance of counsel implicitly embodies a "correlative right to dispense with a lawyer's help." *Adams v. United States ex rel. McCann* (1942), 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268. The court clarified this right to proceed without counsel in the landmark case of *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. "Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." (Footnote omitted.) Id. at 819–820, 95 S.Ct. 2525, 45 L.Ed.2d 562.

{¶ 24} This court, too, has concluded that "a defendant in a state criminal trial has an independent constitutional right of self-representation and * * * may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph one of the syllabus, citing *Faretta*.

{¶ 25} Crim.R. 44 governs the procedure for waiver of counsel in "serious offense" cases. It provides:

{¶ 26} "(A) Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him * * *, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel."

{¶ 27} Crim.R. 44(C) further provides that in "serious offense" cases, the waiver must be in writing.

{¶ 28} Once the right to counsel is properly waived, trial courts are permitted to appoint standby counsel to assist the otherwise pro se defendant. The U.S. Supreme Court first illustrated the idea of "standby counsel," in a footnote in *Faretta v. California*: "Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta*, 422 U.S. at 834, 95 S.Ct. 2525, 45 L.Ed.2d 562, fn. 46.

### Hybrid Representation

{¶ 29} As a threshold matter, we must first determine what form of legal representation Martin received. The state contends that Martin's actions indicate that he was requesting a hybrid form of representation. Moreover, the state argues that hybrid representation is what Martin received. Hybrid representation differs from standby representation in that the defendant and counsel act as co-counsel, sharing responsibilities in preparing and conducting trial.

{¶ 30} Martin asked to be "co-counsel" on the case, to be "part of that defense," "to make sure that * * * proper defense motions are filed," and to have "some control [over] what's going on." After many discussions in which Martin denied that he wanted to proceed pro se, the trial court, against Martin's wishes, stated, "[Y]ou're going to represent yourself." The court, in essence, denied his request to be "co-counsel" and required him to proceed pro se and relegated Martin's counsel to standby status. Although Martin's standby counsel stepped in and argued some motions and asked some questions of witnesses on occasion, Martin was required to conduct large portions of the trial pro se.

{¶ 31} This court has held that "[n]either the United States Constitution, the Ohio Constitution nor case law mandates * * * hybrid representation. See *McKaskle v. Wiggins* (1984), 465 U.S. 168 [104 S.Ct. 944, 79 L.Ed.2d 122]. Although appellant has the right either to appear *pro se* or to have counsel, he has no corresponding right to act as co-counsel on his own behalf." *State v. Thompson* (1987), 33 Ohio St.3d 1, 6–7, 514 N.E.2d 407.

{¶ 32} Today we reaffirm and hold that in Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously. *Parren v. State* (1987), 309 Md. 260, 269, 523 A.2d 597.

{¶ 33} Hybrid representation raises several troubling issues. First, situations may arise in a hybrid representation environment where the accused and his "co-counsel" disagree on strategy, which witnesses to call, and other key trial issues. Who is the ultimate decision maker? Hybrid representation poses difficult ethical issues for counsel and management issues for the trial judge when the defendant and his counsel disagree as to how the trial should proceed.

{¶ 34} Even more troubling is the issue of waiver. As the Maryland high court stated in *Parren v. State*: "The problems arising from such a concept of hybrid representation are apparent. It could not be ascertained by anyone, including the trial court itself, until after the trial whether the defendant had enjoyed representation by counsel, self-representation or hybrid representation, for '[t]he question is one of degree.' [*Bright v. State* (1986), 68 Md.App. 41] at 47, 509 A.2d [1227] at 1230. Neither the court, nor the defendant, nor counsel, nor the prosecutor would know until the record of the trial was examined who was actually responsible for the conduct of the defense and in control of deciding questions and resolving problems as they arose. As Wilner, J., said in his concurring opinion [in *Bright*]:

{¶ 35} " 'There is * * * no clear boundary line between hybrid representation and self-representation. Moreover, when, as in this case, a request for some degree of self-representation is made before trial, there is no way that the court ever can know on what side of the murky line the matter will fall. * * * [T]here are a number of factors to be considered, all of which are necessarily considered *ex post facto*.' [*Bright*, 68 Md.App.] at 57, 509 A.2d at 1235." *Parren v. State*, 309 Md. at 269–270, 523 A.2d 597.

{¶ 36} Thus, in a hybrid situation, it is difficult to ascertain even which parts of a trial have proceeded without counsel and where a waiver, if any, applies. In this case, the trial court, faced with the demands of this particular defendant, determined that Martin's requests would require him to proceed pro se with the assistance of standby counsel. However, under this ruling, Martin's representation resembled pro se status but also included some elements of hybrid representation in that the judge allowed counsel some active role.

## Waiver

{¶ 37} However, even more critical to our analysis today is that the trial judge did not adequately warn Martin of the perils of self-representation before the

judge required him to conduct much of his defense with counsel present in the courtroom but not assisting. Martin himself delivered opening and closing statements, questioned the victim and all other witnesses, and filed a motion to dismiss. Because the court of appeals held that Martin was inadequately advised about the risks of self-representation and did not execute a written waiver, essentially proceeding pro se for the bulk of the trial, the court reversed the judgment of the trial court and remanded the cause for retrial. We agree.

{¶ 38} In this case, there was no signed waiver of counsel. Crim.R. 44(C) provides: "Waiver of counsel shall be in open court and the advice and waiver shall be recorded * * *. In addition, in serious offense cases the waiver shall be in writing." While literal compliance with Crim.R. 44(C) is the preferred practice, the written waiver provision of Crim.R. 44 is not a constitutional requirement, and, therefore, we hold that trial courts need demonstrate only substantial compliance. See *State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474 ("Literal compliance with Crim.R. 11 is certainly the preferred practice, but the fact that the trial judge did not do so does not require vacation of the defendant's guilty plea if the reviewing court determines that there was substantial compliance"); *State v. Stewart* (1977), 51 Ohio St.2d 86, 93, 5 O.O.3d 52, 364 N.E.2d 1163 ("although it can validly be argued that the trial court should adhere scrupulously to the provisions of Crim.R. 11(C)(2), * * * there must be some showing of prejudicial effect before a guilty plea may be vacated. * * * The trial court substantially compiled with the requirements in Crim.R. 11, and the failure to personally advise appellant that in entering a plea of guilty to murder he would not be eligible for probation does not rise to the status of prejudicial error").

{¶ 39} Accordingly, we reaffirm that in the case of a "serious offense" as defined by Crim.R. 2(C), when a criminal defendant elects to proceed pro se, the trial court must demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel. *Gibson*, 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph two of the syllabus. If substantial compliance is demonstrated, then the failure to file a written waiver is harmless error.

{¶ 40} " 'To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' " Id. at 377, 74 O.O.2d 525, 345 N.E.2d 399, quoting *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309.

{¶ 41} The state contends that Martin waived his right to counsel by filing the motion "for respective counsel and co-counsel." However, this was filed before any of the discussions concerning the self-representation issue. Therefore, this pro se motion clearly cannot amount to a waiver of Martin's right to counsel, and we must consider whether Martin was adequately advised of the perils of self-representation.

{¶ 42} Although Martin certainly made statements to the effect that he would like to actively participate in his defense, never did he unequivocally state that he wished to waive his right to counsel. In fact, when the trial court informed him that if he wanted to represent himself he could, Martin responded, "I want to be a part of that defense. I don't want to be assigned." When the trial court asked Martin if it was his intention to act as his own lawyer, again Martin responded, "No, it is not, but that's my intention to participate as to doing all that I can to protect my rights as a citizen." Again, after the court informed Martin that he was placing his attorneys in an awkward position, the court asked, "So, it sounds like you want to be your own attorney, sir?" Martin replied for a third time, "That's not what I'm asking of the Court."

{¶ 43} The trial court cautioned Martin at times that it would be best if Martin were represented by counsel ("I would caution you against abandoning your lawyers but that's your choice"). But the court did not adequately explain the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses, mitigation, or other facts essential to a broad understanding of the whole matter, per *Von Moltke*, 332 U.S. at 724, 68 S.Ct. 316, 92 L.Ed. 309, and *Gibson*, 45 Ohio St.2d at 377, 74 O.O.2d 525, 345 N.E.2d 399.

{¶ 44} We therefore conclude that Martin was not "made aware of the dangers and disadvantages of self-representation" so that the record established that " 'he [knew] what he [was] doing and his choice [was] made with eyes open.' " *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525, 45 L.Ed.2d 562, quoting *Adams v. United States ex rel. McCann*, 317 U.S. at 279, 63 S.Ct. 236, 87 L.Ed. 268. If the court had properly complied with these requirements and had clearly advised Martin that he had no right to be "co-counsel" and that his only choices were to proceed pro se or with counsel, Martin may have made a different choice.

{¶ 45} The trial court failed to substantially comply with Crim.R. 44(A) by failing to make a sufficient inquiry to determine whether Martin fully understood and intelligently relinquished his right to counsel. *Gibson*, 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph two of the syllabus. Thus, we hold that Martin did not knowingly and intelligently forgo the benefits of counsel as envisioned by *Gibson*, *Faretta*, and Crim.R. 44(A). Accordingly, we affirm the

judgment of the court of appeals, remanding the cause for a new trial consistent with this opinion.

Judgment affirmed.

RESNICK, F.E. SWEENEY, PFEIFER, O'CONNOR and O'DONNELL, JJ., concur.

MOYER, C.J., concurs in judgment only.

---

**MOYER, C.J., concurring in judgment only.**

{¶ 46} I concur in the judgment rendered by the majority but write separately for the reasons that follow. I agree with the majority that the trial court did not make a sufficient inquiry to determine whether Martin fully understood and intelligently relinquished his right to counsel as required by both the federal and Ohio Constitutions and Crim.R. 44(A). I do not agree with the majority's implication that it is possible for a trial court to substantially comply with Crim.R. 44[1] in "serious offense" cases where it fails to obtain a waiver of counsel in writing. Rather, Crim.R. 52[2] and relevant case law provide the standards for determining whether trial court error requires reversal of a conviction. In my view, determination of whether Martin's conviction should be reversed and the cause remanded for a new trial due to noncompliance with Crim.R. 44(C) should be made pursuant to those standards rather than pursuant to a substantial-compliance analysis.

{¶ 47} The majority correctly observes that the written-waiver requirement of Crim.R. 44(C) is not a constitutional requirement. Citing our precedent in *State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474, and *State v. Stewart* (1977), 51 Ohio St.2d 86, 93, 5 O.O.3d 52, 364 N.E.2d 1163, it concludes that "trial

---

1. {¶ a} Crim.R. 44 states:

   {¶ b} "(A) Counsel in serious offenses

   {¶ c} "Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.

   {¶ d} "* * *

   {¶ e} "(C) Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing."

2. {¶ a} Crim.R. 52 provides:

   {¶ b} "(A) Harmless error

   {¶ c} "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.

   {¶ d} "(B) Plain error

   {¶ e} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

courts need demonstrate only substantial compliance" with Crim.R. 44. I acknowledge that paragraph two of the syllabus of the majority opinion is consistent with our precedent in *Nero* and *Stewart*. Nevertheless, I believe that those cases should be disaffirmed to the extent that they hold that compliance with a Criminal Rule occurred when in fact there was a clear lack of compliance with an express mandatory component of the rule.

# I

## Determination of the Existence of Error

{¶ 48} Crim.R. 44(C) is clear. It provides: "Waiver of counsel *shall* be in open court and the advice and waiver *shall* be recorded as provided in Rule 22. In addition, in serious offense cases the waiver *shall* be in writing." (Emphasis added.) This court has consistently held that when a statute or rule uses the word "shall," the prescription is not advisory; rather, it is mandatory. See *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 36; *State v. Campbell* (2000), 90 Ohio St.3d 320, 324–325, 738 N.E.2d 1178; *State v. Golphin* (1998), 81 Ohio St.3d 543, 545–546, 692 N.E.2d 608. In adopting Crim.R. 44(C), this court chose the word "shall" three times. We should not deem as advisory in nature such a clear mandate.

{¶ 49} The purpose of Crim.R. 44 is to ensure that a defendant's Sixth Amendment rights are protected. Crim.R. 44(A) requires a waiver of the right to counsel to be knowing, intelligent, and voluntary. This language reflects the constitutional standard established in *Faretta v. California* (1975), 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562, that "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits," quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464–465, 58 S.Ct. 1019, 82 L.Ed. 1461. Crim.R. 44(C), however, adds a procedural layer of protection by requiring that a waiver be in writing. This is an additional safeguard not mandated by the Constitution. In my view, error occurs if compliance is lacking with either Crim.R. 44(A) or (C).

{¶ 50} The majority devotes most of its analysis to the consideration whether Martin made a knowing, intelligent, and voluntary waiver. That inquiry is relevant to the determination whether the trial court complied with Crim.R. 44(A). Only briefly does the majority mention the undisputed fact that Martin never executed a written waiver as required by Crim.R. 44(C). The majority thereby implies that substantial compliance with Crim.R 44(A) is equivalent to substantial compliance with Crim.R. 44 as a whole. In so doing, the majority implies that trial courts need not do what is expressly required by Crim.R. 44(C)—obtain a waiver in writing. Left unchallenged, this implication may potentially result in further erosion of the express requirements of the Rules of

Criminal Procedure and ultimately lessen the probability that criminal defendants receive the full protection of constitutional and procedural law. The Rules of Criminal Procedure should not be reduced to mere malleable guidelines. Failure of a trial court to obtain a written waiver in a "serious offense" case is simply noncompliance with Crim.R. 44(C) and constitutes trial-court error.

## II

### Determination of Reversibility of Error

{¶ 51} As I have stated, the failure of a trial court to comply with a legal rule should be analyzed according to established error analysis embodied in Crim.R. 52 and relevant case law. As we recently explained in *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, Crim.R. 52 empowers appellate courts to correct trial-court error in two situations. First, if a defendant objected to an error at trial, the appellate court considers, pursuant to Crim.R. 52(A), whether the error was harmless. Under a harmless-error inquiry, the state has the burden of proving that the error did not affect the substantial rights of the defendant. Whether the defendant's substantial rights were affected depends on whether the error was prejudicial, i.e., whether the error affected the outcome of the trial. Prejudicial error mandates reversal of the trial court. If the state proves that the error was not prejudicial, the error is said to have been harmless, and the appellate court will not correct it. Id. at ¶ 15.

{¶ 52} When a defendant did not object to an error at trial, the appellate court uses Crim.R. 52(B) to determine whether there was plain error. Id. at ¶ 14. As we explained in *Perry*, under Crim.R. 52(B), the defendant has the burden of proof. Id. Correction of plain error involves three questions and, if appropriate, the exercise of discretion by the appellate court. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. The defendant must first show that the trial court erred by failing to comply with a legal rule. Id. The defendant then must demonstrate that the error was plain, i.e., obvious. Id. Finally, the defendant must show that the error affected his substantial rights. Id. Even if the defendant establishes that plain error affected his substantial rights, the appellate court need not necessarily reverse the judgment of the trial court. In fact, courts are warned to "notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id., quoting *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

{¶ 53} There is also a third category of error, known as structural error. Certain constitutional defects disturb the basic framework within which a trial is conducted and "permeate '[t]he entire conduct of the trial from beginning to end' so that the trial cannot ' "reliably serve its function as a vehicle for determination

of guilt or innocence." ' " *Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 17, quoting *Arizona v. Fulminante* (1991), 499 U.S. 279, 309 and 310, 111 S.Ct. 1246, 113 L.Ed.2d 302, quoting *Rose v. Clark* (1986), 478 U.S. 570, 577–578, 106 S.Ct. 3101, 92 L.Ed.2d 460. Structural error affects the substantial rights of a criminal defendant, even absent a specific showing that the outcome of the trial would have been different, and requires automatic reversal. Because a defendant is relieved of his burden to show prejudice, the finding of structural error is rare and limited to exceptional cases. *Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 18, citing *Johnson v. United States* (1997), 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718. Among the types of error that have been held to be structural is a total denial of counsel to a criminal defendant. Id. at 469, 117 S.Ct. 1544, 137 L.Ed.2d 718, citing *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

{¶ 54} The trial court did not make a sufficient inquiry to determine whether Martin fully understood and intelligently relinquished his right to counsel as required by both the federal and Ohio Constitutions and Crim.R. 44(A). I conclude that this error was structural error and that Martin's conviction must therefore be reversed.

{¶ 55} The presence and limited involvement of standby counsel does not negate the fact that Martin was forced to conduct much of his own defense and was instructed by the trial court that he was to represent himself. This is not a case where counsel was absent, without a waiver, for only a very limited portion of the trial. The trial court's noncompliance with Crim.R. 44(A) was an error that permeated the basic framework of Martin's entire trial. Accordingly, the trial court's noncompliance with Crim.R. 44(A) was structural error. *Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 17.

{¶ 56} The failure of the trial court to procure a written waiver of Martin's right to counsel was an obvious deviation from Crim.R. 44(C). Because Martin did not object to noncompliance with Crim.R. 44(C) at trial, however, he forfeited all but plain error. *State v. Gross,* 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 49. In the instant case, because the failure of the trial court to comply with Crim.R. 44(A) was structural error, it is not necessary to determine whether the failure to obtain a written waiver of the right to counsel is plain error, and if so, reversible error.

## III

## Conclusion

{¶ 57} The trial court failed to obtain a knowing, intelligent, and voluntary waiver, thus materially affecting the integrity of Martin's trial. Although I am

not able to concur in its opinion, I concur in the majority's judgment affirming the judgment of the court of appeals and remanding the cause for a new trial.

———

William D. Mason, Cuyahoga County Prosecuting Attorney, and Saleh S. Awadallah and Lisa Reitz Williamson, Assistant Prosecuting Attorneys, for appellant.

Robey & Robey, Gregory Scott Robey and Margaret Amer Robey, for appellee.

David L. Strait, urging affirmance for amicus curiae, Ohio Association of Criminal Defense Lawyers.