DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Steven A. Pruitt, appeals a jury verdict and sentence from the Lucas County Court of Common Pleas. Pruitt was convicted of the third degree felony of failure to comply with an order or signal of a police officer (a violation of R.C. 2921.331(B) and (C)(5)(a)(ii)) and was sentenced to a term of four years. For the reasons set forth below, we reverse Pruitt's conviction and sentence and remand for further proceedings consistent with this opinion.
 {¶ 2} Pruitt sets forth eight assignments of error.
 {¶ 3} "I. Appellant's due process rights were violated when he was forced to take medication to make him competent to stand trial.
 {¶ 4} "II. The trial court erred in permitting appellant to represent himself without first conducting an adequate colloquy to ensure that this waiver of counsel was knowingly and voluntarily made.
 {¶ 5} "III. Appellant was denied his Sixth Amendment right to effective assistance of counsel by that counsel's failure to adequately safeguard appellant's interest, a violation of due process.
 {¶ 6} "IV. The trial court's ruling that prohibited appellant from admitting expert testimony at trial, unrelated to the insanity defense, to show that he lacked the mental capacity to form the specific mental state required to commit the offense of failure to comply with an order or signal from a police officer violated his constitutional right to compulsory process.
 {¶ 7} "V. Appellant's sentence was not consistent with sentences imposed for similar crimes committed by similar offenders.
 {¶ 8} "VI. The trial court erred in denying appellant's request for new counsel, and appellant was thereby denied his Sixth Amendment right to effective assistance of counsel.
 {¶ 9} "VII. The trial court erred when it failed to charge the jury on the affirmative defense of duress.
 {¶ 10} "VIII. The trial judge abused his discretion and violated the appellant's right to due process of law, pursuant to the constitutions of the United States of America and State of Ohio."
 {¶ 11} The second assignment of error, being dispositive of this appeal, will be discussed first.
Facts
 {¶ 12} On March 25, 2002, Pruitt was observed by Toledo police driving a car listed on a "hot sheet" as possibly stolen. The police activated their lights and sirens on their unmarked car, indicating Pruitt should stop.
 {¶ 13} When Pruitt did not stop the officers gave chase with lights and sirens. A mounted video camera was activated and the police kept in radio contact with dispatch throughout the event. After several blocks, Pruitt's car slid on a snowy side street, and crashed into a fence. The police car also slid out of control, and crashed into Pruitt's car. Pruitt was then arrested.
 {¶ 14} On April 2, 2002, Pruitt was indicted on two felonies: grand theft motor vehicle and failure to obey police signal, felonies of the fourth and third degree, respectively. Pruitt was found to be indigent and the court appointed counsel for him on April 10, 2002. Upon Pruitt's request, the court referred him to the Court Diagnostic and Treatment Center for competency and criminal responsibility evaluations on April 12, 2002. Based on a psychologist's evaluation, the court formally found Pruitt incompetent to stand trial on May 30, 2002. The court then ordered him hospitalized for up to six months for restoration of competency. After the court-ordered hospitalization was complete, Pruitt was returned to the custody of the Lucas County jail.
 {¶ 15} In November 2002, a hearing was held for the ostensible purpose of determining whether Pruitt's competency to stand trial had been restored. Since all of Pruitt's medical reports were not completed, however, the competency hearing was continued until December 2002. In the meantime, the court found that because of Pruitt's experiences in jail, the least restrictive placement for him would be the Mental Health Maximum Security Hospital in Columbus, Ohio. The court also decided that, based on Pruitt's demeanor in court and the records indicating his past refusal to take medications, he "will be ordered to take medications as required to restore him to competency." No other matters were resolved during that hearing.
 {¶ 16} Although the record shows no record of any proceedings between the November competency hearing and a January 30, 2003 pre-trial conference, a court order entered December 24, 2002 indicates that Pruitt withdrew his plea of not guilty by reason of insanity and entered a plea of not guilty. At the January 2003 pre-trial conference, Pruitt requested different appointed counsel. The court denied his request. Then Pruitt asked to represent himself. The trial court agreed, stating, "Well, you can represent yourself, but [counsel is] going to be with you to provide assistance in the event that there's some difficulties. There's an old saying, Mr. Pruitt, that a man who represents himself has a fool for a client. Actually the saying is a lawyer who represents himself has a fool for a client. You wouldn't — you know, you're not going to go around and do surgery on yourself. I wouldn't go into a criminal trial without a lawyer.
 {¶ 17} "You can participate. The law allows you to do that. You can question witnesses and do these things and I'll afford you every right you're entitled to. But I want [appointed counsel] to be present so he can advise you as to what — how you should proceed. And perhaps you're going to decide that maybe it's a good idea to let [appointed counsel] proceed with certain portions of the trial."
 {¶ 18} The court did not ask Pruitt any questions and no other statements regarding Pruitt's self-representation were made.
 {¶ 19} On March 6, 2003, the court held a hearing to decide several discovery motions. Appointed counsel for Pruitt was present, but stated that Pruitt was representing himself: "I am actually at this point in time kind of assisting [Pruitt] because he has indicated to the court that he wishes to be — to represent himself * * * with assistance." Pruitt proceeded to argue the motions himself, although the court called upon his appointed counsel to answer several questions that Pruitt was unable to answer.
 {¶ 20} A second pre-trial conference was held in March 2003, one week before the first scheduled trial date. Both Pruitt and his appointed counsel were present. Several motions relating to discovery and evidence issues were before the court, and both Pruitt and appointed counsel argued each motion. At the end of the hearing, the court noted that it had heard arguments from "counsel for the defendant and the defendant." The court also noted that psychological evaluations of Pruitt were in progress.
 {¶ 21} On May 1, 2003, another competency hearing was held. The court noted that it had reviewed the record and that at a December 2002 hearing,[1] a competency evaluation had been prepared and acknowledged by Pruitt's counsel, but no admission of competency or specific finding of competency had been made. Nevertheless, the psychologist who had evaluated Pruitt in December 2002 was called to testify with his opinion of Pruitt's competency, as it was at the time of that evaluation. On direct examination, the psychologist testified that, although Pruitt was unable to be interviewed because he was uncooperative, Pruitt nevertheless "understands the nature and objectives of the proceedings against him and can assist his attorney in his defense."
 {¶ 22} Pruitt cross-examined the psychologist himself. When Pruitt's questioning strayed beyond the scope of the competency issue, the court asked Pruitt what his position was with respect to his own competency: "Look, you're representing yourself. Is it your position as a defendant that you are competent to stand trial when it's set for trial in two weeks or you're incompetent?" Pruitt was unable to answer, stating that he could not make that determination. Pruitt's appointed counsel did not aid in the cross-examination of the psychologist. After the cross-examination ended, without making a finding, the court scheduled another competency evaluation with another psychologist and set a hearing date.
 {¶ 23} On May 8, 2003, a psychologist evaluated Pruitt for 20 minutes, and a hearing was held immediately afterwards on the issue of Pruitt's competency. Both Pruitt and his appointed counsel were present. The court again noted that "there has been no formal hearing up until today with regards to [Pruitt's] competency." The psychologist testified to his opinion that Pruitt was competent to stand trial. Pruitt declined to cross-examine the psychologist. The court then formally found Pruitt competent to stand trial.
 {¶ 24} Pruitt and his appointed counsel next argued several pending motions. At the end of the hearing, the court instructed Pruitt on how his trial would be conducted. The court told Pruitt, "[Appointed counsel] is your assistant," then continued to state that Pruitt would be allowed to make opening and closing statements and could call and examine witnesses.
 {¶ 25} At the jury trial beginning May 13, 2003, Pruitt participated extensively, with his appointed counsel present and at times assisting. In closing arguments, the prosecutor advised the jury that they were not allowed to sympathize with Pruitt simply because he chose to represent himself. Jury instructions were also given on the issue of pro se representation. Pruitt was found guilty of failure to obey the order or signal of a police officer, but the court declared a mistrial on the offense of grand theft of a motor vehicle. The journalized judgment states that Pruitt was pro se, but that his appointed counsel was present as "co-counsel."
Improper Waiver
 {¶ 26} Pruitt argues that the trial court erred by allowing him to waive his right to counsel without a proper colloquy. Citing Godinez v.Moran (1993), 509 U.S. 389, the state argues that, because Pruitt was found competent to stand trial, he was competent to waive his right to counsel. However, as the transcripts and record demonstrate, the state's version of the chronology is incorrect.
 {¶ 27} A "defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." State v. Gibson (1976), 45 Ohio St.2d 366, paragraph one of the syllabus. An effective waiver requires the trial court to "* * * make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right." Id. at paragraph two of the syllabus, citing Faretta v. California
(1975), 422 U.S. 806.
 {¶ 28} Crim.R. 44 governs assignments of counsel and waivers of the right to counsel. The purpose of Crim.R. 44 is to ensure that a defendant's Sixth Amendment rights are protected. State v. Martin
(2004), 103 Ohio St.3d 385, 395 (Moyer, concurring). Crim.R. 44(C) requires that the waiver of counsel and the statements made to defendant by the trial court regarding the waiver be made in open court and recorded. Additionally, in "serious offense" cases, the waiver must be in writing, although if a court demonstrates substantial compliance with the rule, then the failure to file a written waiver is harmless error. Id. at 392, citing State v. Gibson (1976), 45 Ohio St.2d 366, paragraph two of the syllabus. Substantial compliance exists where the waiver of the right to counsel was made "with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." Von Moltke v. Gillies (1948),332 U.S. 708, 723, cited by State v. Gibson, 45 Ohio St.2d at 377.
 {¶ 29} The state acknowledges that no written waiver exists. The state essentially argues that considering the totality of the circumstances, including the number of hearings held with Pruitt, the court could determine whether he was aware of the dangers of self-representation. However, this does not amount to substantial compliance with Crim.R. 44 and Von Moltke. Although the trial court's colloquy at the January 30, 2003 pre-trial hearing with Pruitt warned him of the dangers of self-representation, and extensive discussions were held during hearings with him regarding available defenses, there is no indication in the record that the trial court discussed the remaining requirements of VonMoltke.
 {¶ 30} Even with appointed counsel present to assist him, essentially Pruitt proceeded pro se. The recent case of State v. Martin (2004),103 Ohio St.3d 385, is helpful in resolving this issue. In Martin, the state argued that a criminal defendant's Sixth Amendment right to counsel was not violated when he received "hybrid" representation. In affirming the reversal of the conviction, the court explained that "hybrid" representation occurred when "the defendant and counsel act as co-counsel, sharing responsibilities in preparing and conducting trial." Id. at 390. The court held that providing a criminal defendant with hybrid representation does not fulfill the requirements of the Sixth Amendment. A criminal defendant has either a right to representation by counsel or a right to proceed pro se with the assistance of standby counsel. Id. at 391. These rights are distinct and may not be asserted simultaneously. Id.
 {¶ 31} In Pruitt's case, the trial court allowed court-appointed counsel to be available; yet since both Pruitt and appointed counsel argued motions, examined witnesses, and shared opening and closing statements, the form of representation resembled the hybrid representation found unacceptable in Martin.
 {¶ 32} Pruitt's competency at the time of waiver, however, is the important issue. He was found incompetent to stand trial on May 30, 2002. "A criminal defendant may not be tried unless he is competent * * * and he may not waive his right to counsel or plead guilty unless he does so `competently and intelligently,' Johnson v. Zerbst, 304 U.S. 458, 468
* * *." Godinez v. Moran, 509 U.S. at 396. Although the standard for evaluating a criminal defendant's competency to stand trial is the same as the standard for determining competency to waive the right to counsel, these are separate and independent standards. Id.
 {¶ 33} Unlike the defendant in Martin, the trial court improperly allowed Pruitt to waive his right to counsel before it found that he was competent to stand trial. Pruitt was even permitted to cross-examine the psychologist who evaluated him for competency. Martin also involved competency issues. A hearing had been held regarding Martin's competency to stand trial and significantly, he appeared to have been found competent before he waived his right to counsel in writing. Furthermore, Martin was warned in four separate hearings, as well as during trial, of the dangers of self-representation.
 {¶ 34} A criminal defendant must be found competent to stand trial before being asked whether he has made a voluntary and knowing waiver of the right to counsel. Godinez v. Moran, 509 U.S. at 400. Here, however, we had no finding of Pruitt's competency before the so-called "waiver."
 {¶ 35} The state is correct in that the competency standard for waiving the right to counsel is no higher than the competency standard for standing trial. Id. at 391. Nevertheless, Pruitt had been foundincompetent to stand trial on May 30, 2002; he had been ordered to treatment for restoration of competency; and he was permitted to orally waive his right to counsel on January 30, 2003, without a finding that he had in fact been restored. Thus, we must presume that Pruitt was incompetent to stand trial when he orally waived his right to counsel, and we must also conclude that he was incompetent to waive that right. Because this conclusion is inescapable, we need not delve further into whether and to what extent the trial court complied with Crim.R. 44.
 {¶ 36} Due to the disposition of the second assignment of error, we need not address the remaining assignments of error. Sec. App.R. 12(A)(1)(c). For the foregoing reasons, we reverse Pruitt's conviction and remand for proceedings consistent with this decision. Costs to appellee pursuant to App.R. 24.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Lanzinger, J., Singer, J.
[1] This hearing is not documented in the record.