[Cite as *State v. Brown*, 2017-Ohio-7704.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 16 MA 0059 |
| VS. | ) | |
| | ) | OPINION |
| JAMES BROWN | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 15 CR 290

JUDGMENT:     Reversed in part and remanded.

APPEARANCES:

For Plaintiff-Appellee     Attorney Paul Gains
Mahoning County Prosecutor
Attorney Ralph Rivera
Assistant Prosecutor
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503-1426

For Defendant-Appellant     Attorney John Falgiani, Jr.
P.O. Box 8533
Warren, Ohio 44484

JUDGES:

Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: September 12, 2017

DeGENARO, J.

{¶1} Defendant–Appellant, James Brown, appeals the trial court's judgment convicting him of aggravated robbery with an attached firearm specification, and sentencing him accordingly. Appointed appellate counsel for Brown has filed a no-merit brief and a request to withdraw as counsel pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.E.2d 493 (1967), and *State v. Toney*, 23 Ohio App.2d 203, 262 N.E.2d 419 (1970). Brown has not assigned any errors pro se. Brown's convictions are affirmed. However, an independent review of the file reveals there is a post-release control sentencing error. Accordingly, the trial court's judgment is reversed in part and the matter remanded for a limited resentencing hearing and sentencing entry to correct the post-release control defect.

### Facts and Procedural History

{¶2} Brown was indicted on two counts of aggravated robbery, one under R.C. 2911.01(A)(1)(C), and the other under R.C. 2911.01(A)(3)(C), both first-degree felonies with attached firearm specifications. Brown was accused of robbing a beer delivery driver, striking the victim in the head with a gun in the process.

{¶3} Brown was arraigned, pled not guilty and counsel was appointed; shortly thereafter he executed a speedy trial waiver.

{¶4} While represented by counsel, Brown filed a series of pro-se motions; to appoint new counsel, to withdraw the speedy trial waiver and for bond reduction. Counsel filed a motion for continuance and at a subsequent pretrial moved to withdraw from the case, which the trial court sustained and appointed new counsel. The trial court never ruled on the rest of Brown's pro-se motions.

{¶5} The grand jury issued a superceding indictment against Brown, which included the original charges and added two new counts; intimidation, R.C. 2921.03(A)(B), and retaliation, R.C. 2921.05(A)(C), both third-degree felonies. The additional charges stemmed from allegations that Brown had threatened a witness in the case. Brown pled not guilty to the charges in the superceding indictment. The State filed several motions to make minor amendments to the indictment, which the trial court granted.

{¶6} The matter proceeded to a jury trial where the following evidence was

adduced. Youngstown Police Officer Robert Giovanni testified he was dispatched to the Jacobs Road Food Market in Youngstown following a 911 call received at 11:01 a.m. He was the first officer on the scene and pulled up behind a beer delivery truck, went inside the store, and saw the delivery driver on the floor, bleeding from his head. The store owner was assisting the driver by holding a towel to the victim's head.

**{¶7}** The officer spoke to the victim who described the assailant as a tall black male. The officer was able to identify Brown as a suspect based upon information from the store owner, communication with other officers, and a check of a law enforcement database. Although a search of the area was conducted, no weapon or suspect was located.

**{¶8}** Youngstown Detective-Sergeant Michael Lambert testified that he spoke to a responding officer who had a name and photo of the suspect. Det. Lambert gave the responding officer permission to show a photo of Brown to the store owner. He did not believe a photo lineup was necessary because the store owner was familiar with Brown and had already identified Brown as the assailant.

**{¶9}** The detective further testified that he spoke with the victim and the store owner as part of his investigation. He said police executed several search warrants at the homes of Brown's mother and girlfriend but recovered no evidence related to the crime. Additionally, the detective interviewed Brown's girlfriend, who gave detailed account of where she had been with Brown on the day of the robbery, except for the time period when the actual robbery took place. He did not further investigate the places she claimed to have been with Brown that day because her "story failed to alibi Mr. Brown for the time of the crime."

**{¶10}** The victim testified that as part of his employment with a distributing company, he was making a delivery when he observed a "very tall" black man over six feet tall, wearing all black clothing and walking down one of the side streets. After delivering one stack of beer, he exited the store to put another stack of beer on his dolly when he saw a man come "running from behind the truck full speed, gun

drawn." He said this was the same man he saw walking down the side street minutes earlier. The victim tried to run into the store, but when he got to the doorway of the store, he was struck from behind on the head. He fell and when he looked up the man was standing over him, yelling and pointing the gun at him. "- - I couldn't really understand exactly what he was wanting, but he wanted - - he wanted the money." The store owner came out and tried to get the assailant off of him but the assailant kept yelling so the victim took $515 he had out of his pocket and gave it to the assailant. He said the assailant then took the money and ran down the street. During trial, the victim identified Brown as his assailant.

{¶11} The store owner testified that after the victim brought in the first load of beer and went back outside to his truck, he observed the victim lying on the ground and a man with a gun over top of him demanding money. When the store owner went outside, the assailant called him by name; he tried to push the assailant off the victim and the assailant ran away. The assailant initially had his shirt pulled up over his face, but when it fell down the store owner recognized the assailant as Brown. The store owner lived in Youngstown for 25 years and knew many people in the neighborhood including Brown and his family, and recognized Brown even when Brown had his shirt pulled up over his face. The store owner identified Brown in the courtroom as the assailant and testified that Brown contacted him from jail and asked him not to testify.

{¶12} The State rested and Brown made a Crim.R. 29 motion for acquittal as to all charges. The trial court overruled the motion as to the aggravated robbery and intimidation counts and the firearm specifications, but sustained the motion as to the retaliation count.

{¶13} The defense then called its witnesses, the first of which was the pharmacy manager of Walgreen's on Market Street in Youngstown, who confirmed that a prescription was dropped off in Brown's name and approximately 30 minutes later "rung out at the register" at 12:17 p.m., well over an hour after the robbery occurred. However, the pharmacist said that anyone could have picked up the

prescription for Brown as long as they could verify his identifying information such as the patient's name and address. He further testified that the store had video cameras.

{¶14} Next, the defense called Brown's girlfriend. Brown was dropped off at her house on the morning of the robbery, but she could not recall the exact time. Once Brown arrived she went outside and talked to a neighbor for several minutes, then she and Brown left in her car to go to Castle Motors to pay her car payment, which was approximately a 15-minute ride away. She recalled that the receipt for her car payment stated the time was 11:30 a.m., which was over 30 minutes after the robbery took place. She said she kept the receipt but that it went missing after police searched her house. She said there were surveillance cameras at Castle Motors. She and Brown then went to BMV "right up the street" from Castle Motors to ask a question about her car tag or title. Then the two drove to the Market Street Walgreen's to fill a prescription for Brown. She also testified that she gave an almost one hour statement to the detective during which time she provided information that could have led to evidence that would have supported Brown's alibi defense.

{¶15} The jury found Brown guilty on the two aggravated robbery counts and their accompanying firearm specifications, and acquitted Brown on the intimidation charge.

{¶16} During the sentencing hearing the trial court merged the two aggravated robbery convictions and the firearm specifications. The State elected to proceed with the count under R.C. 2911.01(A)(1)(C) for sentencing purposes. The trial court sentenced Brown to 11 years for aggravated robbery and three years on the firearm specification which by law was required to be served prior to and consecutive to the aggravated robbery sentence, for an aggregate 14 year prison sentence. The trial court ordered jail-time credit of 173 days along with future custody days while Brown awaited transportation to the appropriate State institution. During the sentencing hearing, the trial court imposed "a mandatory period of post-release control of five years." However, the sentencing entry states: "[i]n addition, as part of this sentence, post release control must be imposed up to a maximum period of five

(5) years."

### *Anders* Review

**{¶17}** An attorney appointed to represent an indigent criminal defendant may seek permission to withdraw if the attorney can show that there is no merit to the appeal. *See generally Anders*, 386 U.S. 738. To support such a request, appellate counsel is required to undertake a conscientious examination of the case and accompany his or her request for withdrawal with a brief referring to anything in the record that might arguably support an appeal. *Toney*, 23 Ohio App.2d at 207. Counsel's motion must then be transmitted to the defendant in order to assert any error pro se. *Id.* at syllabus. The reviewing court must then decide, after a full examination of the proceedings and counsel's and the defendant's filings, whether the case is wholly frivolous. *Id.* If deemed frivolous, counsel's motion to withdraw is granted, new counsel is denied, and the trial court's judgment is affirmed. *Id.*

**{¶18}** Counsel filed a no-merit brief and we granted Brown 30 days to file a pro-se brief, which he has not filed. The no-merit brief review identifies five potential issues for appeal: speedy trial waiver; sufficiency; manifest weight; length of sentence; and ineffective assistance of counsel. In reviewing these possible appellate arguments, counsel concluded that they have no merit and the appeal is frivolous. Each will be discussed in turn. *See State v. Ramey*, 7th Dist. No. 13 MA 64, 2014-Ohio-2345. (addressing potential assignments of error raised in a no-merit brief in this manner).

### Pro-se Speedy Trial Waiver Withdrawal Motion

**{¶19}** Brown's first potential issue for review states:

Were Appellant's rights violated by trial court's failure to allow withdrawal of waiver of speedy trial?

**{¶20}** Brown filed a pro-se motion to withdraw his speedy trial waiver, which the trial court never ruled on. However, at the time Brown was still represented by assigned counsel. Although a defendant has the right to counsel or the right to act

pro se, a defendant does not have any right to "hybrid representation." *State v. Martin*, 103 Ohio St.3d 385, 2004–Ohio–5471, 816 N.E.2d 227, paragraph one of the syllabus; *State v. Thompson*, 33 Ohio St.3d 1, 6-7, 514 N.E.2d 407 (1987). The right to counsel and the right to act pro se "are independent of each other and may not be asserted simultaneously." *Martin* at paragraph one of the syllabus.

**{¶21}** Accordingly, where "counsel represents a criminal defendant, a trial court may not entertain a defendant's pro se motion." *State v. Mongo*, 8th Dist. No. 100926, 2015-Ohio-1139, ¶ 13-15. *Accord State v. Smith*, 4th Dist. No. 09CA29, 2010–Ohio–4507, ¶ 100, *State v. Davis*, 10th Dist. No. 05AP–5039, 2006–Ohio–193, ¶ 12; *State v. Greenleaf*, 11th Dist. No.2005–P–0017, 2006–Ohio–4317, ¶ 70.

**{¶22}** Thus, the trial court did not err by failing to address Brown's pro-se motion to withdraw his speedy trial waiver.

### Sufficiency and Manifest Weight

**{¶23}** Brown's second and third potential issues for review state:

Was the verdict supported by sufficient evidence?

Was the verdict against the manifest weight of the evidence?

**{¶24}** A challenge to the sufficiency of the evidence tests whether the state has properly discharged its burden to produce competent, probative, evidence on each element of the offense charged." *State v. Petefish*, 7th Dist. No. 10 MA 78, 2011-Ohio-6367, ¶ 16. Thus, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).

**{¶25}** Conversely, "[w]eight of the evidence concerns the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the

issue rather than the other." (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id*. This is so because the triers of fact are in a better position to determine credibility issues, since they personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶26}** Thus, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, 678 N.E.2d 541. However, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002 WL 407847, *2, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Under these circumstances, the verdict is not against the manifest weight and is affirmed.

**{¶27}** Brown was convicted of aggravated robbery: "No person, in attempting or committing a theft offense, as defined in section 2913.01 * * * shall do any of the following: * * * Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" R.C. 2911.01(A)(1). Brown was also convicted of an attendant firearm specification, which applies when "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A).

**{¶28}** Regarding sufficiency, there was evidence presented supporting all elements of the offenses. The victim testified the incident occurred at the Jacobs Road Food Mart while he was making a delivery, and noticed a tall black man

wearing black clothing walking down the street. When he came back out to reload his dolly he saw the same man running towards him with a gun. The assailant hit him on the head with the gun; when he fell to the ground the assailant was on top of him, yelling and pointing a gun; when he turned over the cash, the assailant ran away.

{¶29} The store owner testified that he saw the victim lying on the ground and a man with a gun over top of him demanding money; when he came out of the store to help the victim he identified the assailant as Brown, a man he was very familiar with from the neighborhood. Based on this evidence, any rational fact-finder could have found Brown guilty of aggravated robbery with a firearm specification.

{¶30} Turning to manifest weight, Brown did not question that a robbery occurred. Instead, his defense relied upon his alleged alibi. He claimed he was not at the scene of the crime at the alleged time and place because he was with his girlfriend in a different part of Youngstown. Brown also challenged the credibility and reliability of the police investigation or lack thereof. Specifically, the defense argued that his girlfriend gave a lengthy interview to police, and that the information she provided could have led police to discover exculpatory evidence, but that Det. Lambert failed to follow-up on those potential leads. She further testified that she and Brown were at several businesses just after the robbery, and the defense emphasized that, despite this, police did not attempt to obtain any surveillance videos from those businesses. The defense also attempted to challenge the reliability of the witness identification, noting that police did not conduct a lineup.

{¶31} Ultimately, there was no evidence that Brown was with his girlfriend *at the time* the robbery was being committed. Further, as discussed, the State presented ample evidence that Brown was the perpetrator. The store owner testified he was very familiar with Brown from the neighborhood. In sum, it is evident from a review of the testimony that the jury simply decided not to believe Brown's alibi defense. Thus, Brown's convictions are supported by sufficient evidence and are not against the weight of the evidence.

**Sentence**

**{¶32}** Brown's fourth potential issue for review states:

Was the sentence excessive?

**{¶33}** Appellate courts typically review a felony sentence to determine whether the trial court's findings—or where findings are not required, the sentence itself—are clearly and convincingly unsupported by the record, or whether the sentence is otherwise contrary to law. R.C. 2953.08(G)(2); *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1; ¶ 23. *Marcum* does not permit appellate courts to independently weigh the sentencing factors in R.C. 2929.12 on review. *State v. Davis*, 2016–Ohio–7319, 71 N.E.3d 1254, ¶ 5 (7th Dist.), citing *State v. Ongert*, 8th Dist. No. 103208, 2016–Ohio–1543, ¶ 14. In other words, reversal or modification of a sentence in the wake of *Marcum*, "applies to situations in which not one sentencing factor supports a stated prison term or the trial court erroneously relied on factors that did not exist." *Davis* at ¶ 5, quoting *Ongert* at ¶ 13.

**{¶34}** The trial court was not required to make any findings under the statutes referenced by R.C. 2953.08(G). Therefore, Brown's sentence may be overturned only if that sentence was contrary to law or this court clearly and convincingly determines that the record does not support the sentence. *Marcum* at ¶ 23.

**{¶35}** Brown's 14 year prison sentence, although the maximum, is not clearly and convincingly unsupported by the record. Brown had a lengthy criminal history that included an aggravated robbery conviction very similar to the one in this case; he was on post-release control when he committed the instant offenses and did not show remorse for his crimes.

**{¶36}** Brown was afforded his allocution rights pursuant to Crim.R. 32(A)(1). The trial court considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. Brown's 14-year prison term is within the statutory range; it is the maximum sentence. *See* R.C. 2929.14(A)(1) and R.C. 2941.145(A). The trial court properly imposed jail-time credit. During the sentencing hearing, the trial court properly imposed "a mandatory period

of post-release control of five years." *See* R.C. 2967.28(B)(1). The trial court properly explained the ramifications of violating post-release control.

**{¶37}** However, the sentencing entry states that "[i]n addition, as part of this sentence, post release control must be imposed *up to a maximum period of five (5) years.*" (Emphasis added.) The applicable post-release control is a mandatory five-year period. R.C. 2967.28(B)(1). Thus, the "up to a maximum" language is incorrect.

**{¶38}** Even though the error was in the sentencing entry only, for defendants sentenced after July 1, 2006, the proper remedy is a remand for the trial court to conduct a limited resentencing hearing on the issue of post-release control and then issue a sentencing entry. R.C. 2929.191(C). *See State v. Holsinger*, 7th Dist. No. 13 CO 38, 2014-Ohio-2523, ¶ 9-19. *Accord State v. Wolters*, 7th Dist. No. 14 NO 417, 2014-Ohio-5515, ¶ 13-21 (where post-release control notification correct at hearing but incorrect in entry, neither modification of the sentencing entry by appellate court to include the required language, nor a remand with direction for the trial court to issue a nunc pro tunc without a hearing are an adequate remedy.)

### Ineffective Assistance of Counsel

**{¶39}** Brown's fifth potential issue for review states:

Did Appellant receive effective assistance of counsel?

**{¶40}** To prove ineffective assistance of counsel, the defendant must satisfy a two-prong test; that counsel's performance has fallen below an objective standard of reasonable representation, and that he was prejudiced by counsel's performance. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), at paragraph two of the syllabus. To demonstrate prejudice, the defendant must prove that, but for counsel's errors, the result of the trial would have been different. *Id.*, paragraph three of the syllabus. In Ohio, a properly licensed attorney is presumed to be competent and the burden is on the defendant to prove otherwise. *State v. Hamblin*, 37 Ohio St.3d 153,

155, 524 N.E.2d 476 (1988).

{¶41} While there were apparently problems between Brown and the first attorney who was appointed to represent him and soon moved to withdraw, the attorney who ultimately tried the case was appointed relatively early in the proceedings. Trial counsel engaged in discovery and other activity to prepare his defense of the case. At trial, counsel engaged in effective advocacy and was able to effectively cross-examine the State's witnesses, particularly the police officers, based upon their failure to fully investigate the case. In addition, trial counsel made several motions under Crim.R. 29 and convinced the trial court to dismiss one count of the indictment. The jury acquitted Brown on another count and convicted him on two counts of aggravated robbery with the firearm specifications which merged. Thus, trial counsel was not constitutionally ineffective.

{¶42} In sum, the specific potential issues raised by Brown's appointed appellate counsel are without merit. Brown's convictions are affirmed. However, this court's independent review of the record reveals that there was a post-release control error in the sentencing entry: the trial court misstated the applicable post-release control term. Pursuant to R.C. 2929.191(C), the sentencing judgment is reversed and the matter remanded for a limited resentencing hearing and sentencing entry to correct the post-release control defect. *See Holsinger*, *supra*.

Waite, J., concurs.

Robb, P. J., concurs.