DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Jack B. Julian, appeals his conviction for assault entered by the Williams County Court of Common Pleas in the above-captioned case on the grounds that: (1) his waiver of counsel was inadequate; (2) the trial court improperly permitted "hybrid representation"; and (3) appellant's trial counsel was ineffective. For the reasons that follow, we affirm the judgment of the trial court. *Page 2 
 {¶ 2} On November 16, 2005, appellant was indicted on a single charge of assault, in violation of R.C. 2903.13 (A)(C)(3). On November 17, appellant made his initial appearance before the trial court. At that time, the trial court informed appellant of the nature of the charges against him, as follows:
 {¶ 3} "Yesterday the Williams County Grand Jury returned a one count Indictment against you, Mr. Julian, charging that on or about the 30th day of October of 2005 you caused or attempted to cause physical harm to Sgt. Douglas Moser, a deputy of the Williams County Sheriffs Department while he was in the performance of his official duties. That defines the offense of assault, a felony of the fourth degree. A felony of the fourth degree carries a maximum penalty of eighteen months of incarceration and a fine of up to $5,000.00 if you are found not to be indigent."
 {¶ 4} After so advising appellant, the trial court appointed counsel for him.
 {¶ 5} On November 22, 2005, appellant, with appointed counsel, John Shaffer, appeared for arraignment. There, the following exchange occurred between the court, appellant, and attorney Shaffer:
 {¶ 6} THE COURT: "This is Case No. 05CR 126, State of Ohio against Jack B. Julian. Mr. Roth is here, the Williams County Prosecutor. And also Mr. Julian is here together with Mr. Shaffer, his appointed counsel.
 {¶ 7} "The matter specifically set for today is an arraignment. An arraignment is a proceeding, Mr. Julian, in which you are asked to enter a plea to the charges pending *Page 3 
against you. The pleas available to you are not guilty, no contest, guilty or not guilty by reason of insanity. Those are the four pleas that are allowed under Ohio law.
 {¶ 8} "Are we prepared to proceed to that arraignment?"
 {¶ 9} MR. JULIAN: "Is it that the Court wishes to, if I wish to dismiss John Schaffer as an attorney and not represent me-"
 {¶ 10} THE COURT: "Well, let's do what we're here to do first, and that's the arraignment. Are you going to enter a plea to this charge?"
 {¶ 11} MR. SHAFFER: "You understand the charge that has been filed against you, Jack?"
 {¶ 12} THE COURT: "You're entitled to have this again read to you. I read it to you the other day on video, but I will read it again. It is alleged in the indictment that on or about the 30th day of October you knowingly caused or attempted to cause physical harm to another person, to-wit: Sgt. Douglas Moser, a deputy of the Williams County Sheriffs Department, while he was in the performance of his duties. That defines the offense of Assault. Because the person who was assaulted allegedly was a police officer, that offense is a felony of the fourth degree. A felony of the fourth degree under Ohio law carries a maximum penalty of eighteen months and a maximum fine of $5,000.00. Now you've been found to be indigent, so no fine would be imposed.
 {¶ 13} "So to that charge I am asking if you're prepared to tender a plea of either not guilty, no contest, guilty or not guilty by reason of insanity. Those are your four options." *Page 4 
 {¶ 14} * * *
 {¶ 15} THE COURT: "* * * If you tender a plea of not guilty then it becomes incumbent on the State of Ohio to prove beyond a reasonable doubt that this offense occurred. You don't need to present any evidence whatsoever. The State at a trial would present its evidence and then you have an opportunity to either present evidence or not. And if the State's evidence is deemed to have not proven the charge beyond a reasonable doubt then that results in an acquittal.
 {¶ 16} "By pleading not guilty you place the burden on the State to prove this charge."
 {¶ 17} MR. SHAFFER: "Do you understand that?"
 {¶ 18} MR. JULIAN: "Can we make a motion at this time to dismiss these charges?"
 {¶ 19} THE COURT: "That's not-"
 {¶ 20} MR. JULIAN: "With prejudice."
 {¶ 21} THE COURT: "That's not appropriate until after the case is at issue and that will not occur until you have tendered a plea. If such a motion were made now, based on the state of the record it would be denied because the indictment appears to be in proper form and that's sufficient for the Court to require this case to continue."
 {¶ 22} MR. JULIAN: "Even though such a — That there is no claim of any monetary damages or any-" *Page 5 
 {¶ 23} THE COURT: "It's a criminal matter, Mr. Julian, and it's an offense, considered to be an offense against the State. And that's why the plaintiff is the State of Ohio and not an individual."
 {¶ 24} * * *
 {¶ 25} MR. JULIAN: "I will go, I guess, Your Honor, that I am going to plead not guilty."
 {¶ 26} THE COURT: "All right. That plea will be accepted.
 {¶ 27} "I will address this other issue. You've indicated that you are indigent, Mr. Julian, and have signed an affidavit to that extent. Based on that you are entitled to have an attorney appointed. And I have on your behalf appointed Mr. Shaffer who you know and who you know to be probably the most experienced criminal trial lawyer, defense lawyer, in the county. And the matter, if all things flow from that, he would be responsible then to mount your defense at a trial. And I'm prepared to continue in that vein. You indicated through Mr. Schaffer at some point that you wanted to represent yourself or that you wanted other counsel or that you're not wanting to proceed at this time. But I caution you that the, kind of the lore of persons representing themselves was addressed by Abraham Lincoln a hundred and thirty years ago when he said a person who represents himself has a fool for a client, the implication being that it's a foolish act to try to represent yourself. But it's up to you. If you decide to represent yourself I'm still going to ask Mr. Shaffer to stand by and to provide such advice to you as you from [time] to time may require. I'm not going to relieve him unless it is for some cause and that *Page 6 
cause would have to be that you and he have reached some impasse that is impossible to reconcile."
 {¶ 28} MR. JULIAN: "We understand that, You Honor. And right now we'll-"
 {¶ 29} THE COURT: "Proceed with Mr. Shaffer?"
 {¶ 30} MR. JULIAN: "Proceed the way we're going right now as you mentioned."
 {¶ 31} THE COURT: "All right."
 {¶ 32} MR. SHAFFER: "So you want me to assist you but not represent you? Or do you want me to represent you?"
 {¶ 33} [THE COURT]: "I think the implication is that as of right now you are his attorney until I hear otherwise."
 {¶ 34} MR. SHAFFER: "Is that okay, Jack? Great."
 {¶ 35} On February 3, 2006, the trial court was provided with the results of a competency examination administered by clinical psychologist, Gregory E. Forgac, of the Court Diagnostic and Treatment Center in Toledo, Ohio. Under the heading "Competency Assessment," the report stated the following:
 {¶ 36} "In discussing his current legal predicament, [appellant] stated he is charged with Assault. When I asked what does this charge mean he stated, `Knowing or willfully tried to harm another individual or unborn child. Felony if peace officer'. When asked for an example of a crime more serious than this he stated, `Battery'. When I asked him again he stated, `Murder'. When asked for an example of a less serious crime he stated, `Seat belt'. When asked what could happen to him if he is found guilty of this *Page 7 
charge he stated, `Whatever it is, it's guidelines, eighteen months'. When asked if he could be placed on probation or given a fine he stated, `I believe those were not added'. When asked what should he do if a witness lied about him during his trial, he indicated he did not know and this matter was then discussed with him. When asked what does it mean if an individual pleads Guilty he stated, `That they did it'. When asked about a Not Guilty plea he stated, `Innocent'. Finally, when asked about a No Contest plea he stated, `Falling on the mercy of the court'. This matter was then discussed with him. When asked to define the meaning of a Plea Bargain he stated, `A contract between the prosecutor and the attorney as to what will take place'. This matter was discussed with him. When he was presented with a hypothetical situation in which he was unjustly accused of a crime, he was able to come up with an appropriate alibi using a witness to prove his innocence.
 {¶ 37} "When presented with a picture of a courtroom, this man was able to accurately identify all the locations of the significant individuals involved in the trial. When asked about the roles of the various individuals involved in the trial, this man stated that the judge is `Supposed to take an unbiased position. He's to make sure constitutional rights are not conflicted upon, that things don't get out of hand between conflicting parties. When asked about the role of the jury he stated, `Decide if beyond a reasonable doubt if individual could or could not be guilty'. When asked to name his attorney he stated, `John Shaffer'. When I asked if he trusts his attorney he stated, `I don't know'. When asked about his attorney's role he stated, `Supposed to represent my rights'. *Page 8 
When asked how can he assist his attorney he stated, `By telling him my rights are being violated. Help him create a picture of what happened'. When asked about the role of the prosecuting attorney he stated, `See if he has enough evidence to prosecute a case, prove guilty beyond a reasonable doubt'. Finally, when asked about the role of witnesses he state, `Tell the truth, the whole truth and nothing but the truth'."
 {¶ 38} Under the heading "Conclusions," Dr. Forgac wrote:
 {¶ 39} "* * * [Appellant] was able to converse with me appropriately and he appeared capable of understanding the nature and objectives of the proceedings which have been brought against him. He appeared to have the capacity to disclose circumstances surrounding the alleged offense and to testify relevantly in his own defense. He appeared to have an adequate awareness of the roles of the various participants in the trial, and this awareness approximates that of the average lay person. If there are any gaps in his knowledge of the current legal situation and the workings of the court system, it would appear that he could be educated in these matters by his legal counsel. * * * Mr. Julian did appear to have the capacity to exercise appropriate behavioral controls within a courtroom.
 {¶ 40} "Taking all the information which was available to me into consideration, it is my opinion that on the day of this evaluation, Jack B. Julian was able to understand the nature and objectives of the proceedings which have been brought against him and was capable of assisting an attorney in his own defense." *Page 9 
 {¶ 41} On March 16, 2006, a jury trial was held on the matter. On the morning of trial, the court introduced the parties and indicated that appellant wished to represent himself in the matter and that attorney Shaffer would be there "to stand by and offer such assistance as he can."
 {¶ 42} Following the introductions, voir dire began. After the trial court and the prosecution had concluded their questioning of the prospective jurors, it was time for the defense to begin its participation. Shaffer addressed the jury, stating as follows:
 {¶ 43} "As the Judge said, I'm just assisting. And this is one aspect of the trial that is difficult for lay people to perhaps participate in; therefore, this is one aspect that I'll be helping Jack."
 {¶ 44} Schaffer then questioned the prospective panelists.
 {¶ 45} During formal opening statements, Shaffer presented the statement for the defense. At the end of his presentation, Shaffer invited some additional input from appellant concerning the location of the alleged assault. This additional information came by way of appellant's answering questions put to him by Shaffer.
 {¶ 46} During the prosecution's case-in-chief, both Shaffer and appellant participated in cross-examination of the state's witnesses. The defense case was conducted entirely by Shaffer. Following the trial, the jury returned a unanimous verdict of guilty.
 {¶ 47} Appellant timely appealed the judgment of conviction, raising the following assignments of error: *Page 10 
 {¶ 48} I. "THE TRIAL COURT ERRED WHEN IT FAILED TO FOLLOW OHIO CRIMINAL RULE 44(C) WHEN THE APPELLANT ASKED TO REPRESENT HIMSELF PRO SE."
 {¶ 49} II. "THE TRIAL COURT ERRED WHEN IT PERMITTED THE DEFENSE ATTORNEY TO ACT AS CO-COUNSEL WITH THE DEFENDANT."
 {¶ 50} III. "THE TRIAL COURT'S ERROR RESULTED IN INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 51} We begin with appellant's first assignment of error, wherein he states that the trial court erred in failing to follow Crim.R. 44(C) when appellant asked to represent himself.
 {¶ 52} A criminal defendant has a constitutional right to represent himself at trial, but only if he knowingly, voluntarily, and intelligently waives his right to counsel. Faretta v. California (1975),422 U.S. 806; State v. Johnson, 112 Ohio St.3d 210, 2006-Ohio-6404, at ¶ 89. To establish an effective waiver of the right to counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right.Johnson, supra.
 {¶ 53} Similarly, Crim.R. 44(A) provides that a defendant charged with a serious offense is entitled to counsel "unless the defendant, after being advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel."[1] *Page 11 
The Supreme Court of Ohio held in State v. Martin, 103 Ohio St.3d 385,2004-Ohio-5471, that "[i]n the case of a `serious offense' * * * when a criminal defendant elects to proceed pro se, the trial court must demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel." Id., at paragraph two of the syllabus (emphasis added).
 {¶ 54} We note that Crim.R. 44(C) expressly requires that waiver of counsel in serious offense cases shall be in writing. However, where substantial compliance is demonstrated, the failure to file a written waiver is harmless error. Martin, supra, at ¶ 39.
 {¶ 55} In determining the sufficiency of the trial court's inquiry in the context of a defendant's waiver of counsel, this Court considers the totality of the circumstances surrounding the case, including the background, experience, and conduct of the accused. State v.Bumphus, 6th Dist. No. E-03-043, 2005-Ohio-536, ¶ 13. Further, "`[i]n verifying that a waiver of counsel is made knowingly, voluntarily, and intelligently, a trial court should determine whether the defendant was advised of the dangers and disadvantages of self representation. While no one factor is dispositive, the trial court should consider whether the defendant was advised of the nature of the charges and the range of allowable punishments, and, in addition, may consider whether the trial court advised the defendant of the possible defenses to the charges and applicable mitigating circumstances.` State v. Smith, 9th Dist. No. 23006, 2007-Ohio-51, at ¶ 8, citing State v. Trikilis, 9th Dist. Nos. 04CA0096-M, 04CA0097-M, 2005-Ohio-4266, at ¶ 13. *Page 12 
 {¶ 56} Here, the trial court was provided with the results of a competency examination which indicated that appellant was able to understand the nature and objectives of the proceedings against him and, further, that he was capable of assisting an attorney in his own defense. In addition, during his November 22, 2005 arraignment, the trial court cautioned appellant against declining the assistance of counsel, reciting the well-known adage that "a person who represents himself has a fool for a client." Both at the November 16, 2005 initial appearance and at the November 22, 2005 arraignment, the trial court advised appellant of the nature of the charges and of the maximum penalty and fine.
 {¶ 57} We note that at no point did appellant display any confusion about what he wanted or what self-representation meant. See,Johnson, supra, at ¶ 97 (wherein Supreme Court recognized defendant's lack of confusion as supportive of sufficiency of trial court's inquiry).
 {¶ 58} Based on the foregoing, we conclude that the trial court made a sufficient inquiry to determine that appellant knowingly, intelligently, and voluntarily waived his right to counsel and, therefore, substantially complied with Crim.R. 44. Although the court erred when it failed to obtain a written waiver of counsel as directed by Crim.R. 44(C), because it substantially complied with Crim.R. 44, "the failure to file a written waiver is harmless error." Johnson, supra, at ¶ 99;Martin, supra, at ¶ 39. Appellant's first assignment of error is, therefore, found not well-taken. *Page 13 
 {¶ 59} We next consider appellant's second assignment of error, wherein he states that the trial court erred when it permitted the defense attorney to act as "co-counsel" with appellant. In Ohio, although a criminal defendant has the right to be represented by counsel or to proceed pro se with the assistance of standby counsel, the two rights are independent of each other and may not be asserted simultaneously. Martin, 103 Ohio St.3d 385, at paragraph one of the syllabus. Thus, Ohio law prohibits a defendant and his appointed counsel from acting as "co-counsel" in handling the defendant's case. Id., at ¶ 44; see also, Johnson, 112 Ohio St.3d 210, at ¶ 96.[2]
 {¶ 60} In contrast to the "co-counsel" situation that was presented inMartin is the current situation where a right to counsel was properly waived. Where a right to counsel *Page 14 
is properly waived, a trial court may appoint standby counsel to assist the pro se defendant. Martin, supra, at ¶ 28.
 {¶ 61} In McKaskle v. Wiggins (1984), 465 U.S. 168, the United States Supreme Court determined that a defendant's right to conduct his own defense does not include an absolute ban on standby counsel's unsolicited participation. Id., at 176. In addition, the court noted that a defendant can waive his Faretta rights. Id., at 182. As long as a pro se defendant expressly approves, participation by counsel is constitutionally unobjectionable. Id.
 {¶ 62} As stated by the court in McKaskle, "A defendant's invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense." Id. Further, "Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." Id., at 183.
 {¶ 63} In the instant case, appellant makes no assertion — and this court's review of the record reveals no evidence to suggest — that he believed himself to be co-counsel. In fact, the trial court expressly informed both appellant and the jury that Shaffer was acting as appellant's "standby counsel."
 {¶ 64} Because appellant invited Shaffer's appearances — to wit, in the conducting of voir dire, the presentation of the opening statement, cross-examination of the state's *Page 15 
witnesses, and the conducting of the entirety of the defense case — without ever expressly and unambiguously renewing his request that standby counsel be silenced, Shaffer's participation is presumed to have been with appellant's acquiescence. Accordingly, appellant's second assignment of error is found not well-taken.
 {¶ 65} Finally, we consider appellant's third assignment of error, wherein he claims that appellant's standby counsel was not effective in assisting appellant in his own defense.
 {¶ 66} To establish a claim for ineffective assistance of counsel, appellant must show: (1) that counsel's performance was deficient (to the extent that it fell below an objective standard of reasonable representation); and (2) prejudice (creating a reasonable probability that, but for counsel's errors, the proceeding's result would have been different). Johnson, 112 Ohio St. 3d. 210, at ¶ 119.
 {¶ 67} Here, appellant specifically challenges standby counsel's having "permitted" appellant "to ask questions of witnesses when he quickly should have realized that his client was not making any sense." We reject this argument out of hand, as it was clearly not standby counsel's duty (or even prerogative) to deprive appellant of his right to represent himself in the manner that appellant saw fit.
 {¶ 68} Appellant next complains that "trial counsel stated that he would help with voir dire because it is a difficult process but then only asked the jurors several questions. * * * Again, a strategy that appears to coincide with his belief that his client was representing himself and his role was advisory." As we indicate above, appellantwas *Page 16 
representing himself, and standby counsel's participation — while certainly substantial — was at appellant's request, and, therefore, was wholly appropriate.
 {¶ 69} As appellant's allegations fail to satisfy even the first prong of the Strickland test, they are properly dismissed as meritless. Appellant's third assignment of error is therefore found not well-taken.
 {¶ 70} For all of the foregoing reasons, the judgment of the Williams County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
[1] A "serious offense" is defined at Crim.R. 2(C) as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months."
[2] Although this court, in State v. Bumphus, 6th Dist. No. E-03-043, 2005-Ohio-536, construed Martin as requiring that standby counsel "remain silent and act only as a consultant while a client pursues a wayward or even disastrous course of action," the more recent case ofState v. Johnson, 112 Ohio St.3d 210, 2006-Ohio-6404, makes clear thatMartin should not be so strictly interpreted.
Johnson involved a defendant who, although represented by counsel throughout the state's case-in-chief, chose to represent himself during the latter portion of the guilt phase of his capital murder trial. He called and questioned a single witness (against his lawyer's advice), and made a brief closing argument. Despite his self-representation, defense counsel continued to assist him. They made motions for a mistrial and for a competency evaluation, and they discussed jury instructions with the trial judge and the prosecutor. In addition, the trial court allowed defense counsel to present their own final argument following that presented by defendant. The defendant's attorneys resumed their full representation of the defendant during the penalty phase of the trial. The court in Johnson, instead of finding that this representation was the type of representation prohibited byMartin because it involved the participation of both the defendant and his counsel, distinguished Martin as involving a defendant who "disclaimed" any desire to act as his own lawyer, and, unlike theJohnson defendant, desired to be "co-counsel". Johnson, at ¶ 96 (emphasis in original). *Page 1