[Cite as *State v. Armstrong*, 2011-Ohio-661.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09-MA-204 |
| | ) | |
| ROBERT T. ARMSTRONG, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 09CR744

JUDGMENT: Affirmed

APPEARANCES:
For Plaintiff-Appellee

Paul Gains
Prosecutor
Ralph M. Rivera
Assistant Prosecutor
21 W. Boardman St., 6th Floor
Youngstown, Ohio 44503-1426

For Defendant-Appellant

Attorney Dennis Day Lager
209 S. Chestnut Street, Suite 400
Ravenna, Ohio 44266

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: February 7, 2011

DONOFRIO, J.

{¶1} Defendant-appellant, Robert Armstrong, appeals from a Mahoning County Common Pleas Court judgment convicting him of attempted murder and an accompanying firearm specification following a jury trial.

{¶2} During the afternoon of June 23, 2009, Eric Weaver was outside of a house on Monroe Street in Campbell when he saw a man whom he identified as appellant standing in the driveway. According to Weaver, appellant asked Weaver if he had any problems with him to which Weaver responded "no." When Weaver turned to enter the house appellant pulled out a gun and started shooting him. As a result, Weaver lost a kidney and half of his intestines and suffered fractures to his face, wrist, and shoulder.

{¶3} A Mahoning County grand jury initially indicted appellant on felonious assault charges. It later issued a superseding indictment charging him with attempted murder, a first-degree felony in violation of R.C. 2903.02(A)(D) and R.C. 2923.02(A)(E)(1); two counts of complicity to commit attempted murder, first-degree felonies in violation of R.C. 2903.02(A)(D), R.C. 2923.02(A)(E)(1), and R.C. 2923.03(A)(2)(F); and accompanying firearm specifications in violation of R.C. 2941.145(A).

{¶4} The matter proceeded to a jury trial. The state dismissed the complicity charges and prosecuted only the attempted murder charge along with the firearm specification. The jury returned a guilty verdict. The court subsequently sentenced appellant to ten years for attempted murder and three actual years on the firearm specification to be served prior to and consecutive to the ten-year sentence for a total of 13 years in prison. Appellant filed a timely notice of appeal on December 10, 2009.

{¶5} Appellant raises three assignments of error, the first of which states:

{¶6} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DENYING DEFENDANT-APPELLANT'S CRIMINAL RULE 29 MOTION FOR DIRECTED VERDICT OF ACQUITTAL, MADE AT THE CLOSE OF THE STATE'S CASE AND AGAIN AT THE CLOSE OF ALL THE EVIDENCE, WHEN THERE WAS INSUFFICIENT EVIDENCE TO PROVE THE ELEMENTS OF THE CRIME OF ATTEMPTED MURDER AND FIREARM SPECIFICATIONS IN

VIOLATION OF R.C. 2903.02(A), R.C. 2923.02(A)(E)(1) AND R.C. 2941.145(A), BY PROOF BEYOND A REASONABLE DOUBT."

{¶7} Appellant argues here that plaintiff-appellee, the State of Ohio, failed to establish he was the one who shot Weaver. Therefore, appellant contends that his conviction was not supported by sufficient evidence. He claims that Detective Sergeant John Rusnak never testified that Weaver identified anyone from the photo lineup as the person who shot him. He asserts that Detective Rusnak only testified that Weaver pointed to a picture of him without communicating anything more. Appellant further asserts that ATF Agent Robert Daniels likewise did not clearly testify that Weaver identified him as the shooter. Finally, appellant contends that Weaver did not identify him in court as the person who shot him.

{¶8} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith* (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith,* 80 Ohio St.3d at 113.

{¶9} The jury convicted appellant of attempted murder in violation of R.C. 2903.02(A) and R.C. 2923.02(A). R.C. 2903.02(A) provides in relevant part that no person shall purposely cause the death of another. R.C. 2923.02(A) defines an attempt: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶10} The only element appellant takes issue with is his identity. He contends that the evidence was insufficient to prove that he was the one who shot Weaver. The evidence at trial was as follows.

{¶11} Detective Sergeant David Taybus was the first officer to respond to Weaver's shooting. Detective Taybus testified that as he arrived on the scene, he noticed a gray van in the driveway with its door open. (Tr. 101). He also observed Weaver laying in the front yard bleeding. (Tr. 101). Detective Taybus saw that Weaver suffered between five to seven gunshot wounds. (Tr. 104). Detective Taybus asked Weaver who shot him. (Tr. 105). Weaver responded, "Armstrong shot me." (Tr. 105). At the time, Detective Taybus was alone with Weaver, but he stated that Weaver later repeated this statement when Detective Rusnak appeared on the scene. (Tr. 105-106).

{¶12} Detective Taybus went on to testify that while he was tending to Weaver and before Detective Rusnak arrived, someone moved the van out of the driveway but he did not see who did it. (Tr. 106). He stated that he later saw the van parked on the road approximately 60 feet away with its doors locked. (Tr. 106-107). Detective Rusnak testified that he ran the license plates and the van came back registered to appellant. (Tr. 107). He had the van towed to the police department. (Tr. 107).

{¶13} Detective Rusnak also responded to Weaver's shooting. He heard Detective Taybus ask Weaver who did this to him and Weaver responded, "Armstrong." (Tr. 125). He testified Detective Taybus asked for the shooter's full name and Weaver stated, "Robert Armstrong." (Tr. 125).

{¶14} Detective Rusnak testified that a few months after the shooting, he went to the hospital with Agent Davis to show Weaver a six-person photo lineup. (Tr. 126). At the time, Weaver's jaw was still wired shut so he could not speak. (Tr. 126). Detective Rusnak asked Weaver to point to the person that shot him. (Tr. 126). Weaver pointed to appellant's photograph. (Tr. 126). Detective Rusnak stated that Agent Davis then circled, initialed, and dated appellant's photo. (Tr. 126). He testified that Weaver never identified anyone else as the person who shot him. (Tr. 129). And Detective Rusnak identified appellant in court. (Tr. 129).

{¶15} On cross examination, Detective Rusnak stated that Weaver did identify

another person, Elijah Johnson, in another photo lineup as having been involved in the incident. (Tr. 139-40). Detective Rusnak testified that the police thought the motive for the shooting could have been related to a prior shooting where Johnson was believed to have killed Weaver's friend, Dwayne Adams. (Tr. 139-40).

**{¶16}** Additionally, Detective Rusnak read from a Bureau of Criminal Identification and Investigation (BCI) report analyzing two 9mm shell casings taken from the scene and stating that they were consistent with having been fired from a Glock 9mm. (Tr. 135-37). Based on the report, Detective Rusnak also stated, it was possible that there may have been two guns involved. (Tr. 137). On redirect, Detective Rusnak testified that he had arrested appellant previously for having a Glock handgun. (Tr. 143). He stated, however, the gun was never returned to appellant. (Tr. 145).

**{¶17}** Agent Davis testified next. His only involvement in the case was accompanying Detective Rusnak to show Weaver the photo lineup. Agent Davis testified that he asked Weaver if he could pick out from the photo lineup the individual who shot him. (Tr. 152). At that point, Agent Davis stated, Weaver selected appellant. (Tr. 152). When asked if he saw the man in the courtroom that Weaver picked out, Agent Davis stated that he was "assuming" it was the gentleman at the defense table. (Tr. 154).

**{¶18}** Weaver was the last state's witness to testify. He first admitted to having a history of dealing drugs. (Tr. 161). Weaver stated that he has known appellant for approximately six years. (Tr. 161). He then identified appellant in the courtroom. (Tr. 162). Weaver testified that he saw appellant the day before the shooting. (Tr. 162). He stated that he asked appellant if something was going on with him and Elijah Johnson trying to "do something" to him. (Tr. 162). Appellant told him "no" and they walked away from each other. (Tr. 162).

**{¶19}** Weaver testified that the next day he noticed appellant in the driveway of the house on Monroe Street. (Tr. 165). Weaver stated that appellant asked him if he had any problems with him, to which Weaver responded, "no." (Tr. 165). Weaver

stated that he then turned to walk into the house when appellant pulled out a gun and started shooting him. (Tr. 165). Weaver testified that he never saw anyone there with a gun other than appellant. (Tr. 167).

{¶20} On cross examination, Weaver testified that just the day before the shooting he saw appellant and thought the two were still friendly with each other. (Tr. 177). And when asked why he thought appellant shot him, Weaver stated, "I still don't know why." (Tr. 179). He could only speculate that appellant thought Weaver had a problem with him because he had asked about Johnson the day before. (Tr. 179).

{¶21} Appellant testified in his own defense. He stated that on the morning of the shooting he went to visit a girl who lived near where Weaver was shot. (Tr. 191-92). While he was waiting for her, he parked his van in a parking lot on Jackson Street. (Tr. 192). Appellant stated that he then received a call from his friend Jerry who asked to borrow a saw he had in his van. (Tr. 192). He testified that Jerry came to meet him and the two eventually heard gunshots. (Tr. 194). Appellant stated they jumped into Jerry's car and drove to Jerry's house, leaving his locked van behind. (Tr. 194-95). Appellant later learned that there were rumors circulating that he shot Weaver. (Tr. 196). And when his mother told him the police were looking for him, appellant turned himself in. (Tr. 197). Appellant denied having anything to do with Weaver's shooting. (Tr. 198).

{¶22} This evidence, especially when viewed in the light most favorable to the state, is more than sufficient to identify appellant as Weaver's shooter. Shortly after being shot, while he lay bleeding, Weaver told Detectives Taybus and Rusnak more than once that "Armstrong" shot him. And while he was still in the hospital with his jaw wired shut, Weaver picked appellant's picture out of a photo lineup when asked by Detective Rusnak and Agent Davis if he could identify the man who shot him. Weaver identified appellant in court. And he testified that it was appellant who shot him.

{¶23} Weaver never wavered in his identification of appellant and never

indicated that anyone other than appellant shot him. Furthermore, Weaver and appellant had known each other for approximately six years. Accordingly, appellant's first assignment of error is without merit.

**{¶24}** Appellant's second assignment of error states:

**{¶25}** "THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY IMPROPERLY INSTRUCTING THE JURY ON THE LAW OF CIRCUMSTANTIAL EVIDENCE, ALL OF WHICH CONSTITUTED PLAIN AND STRUCTURAL ERROR IN THE TRIAL PROCEEDINGS, THUS DEPRIVING DEFENDANT-APPELLANT OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW."

**{¶26}** In instructing the jury on circumstantial evidence, the trial court stated:

**{¶27}** "Circumstantial evidence is different. Circumstantial evidence is the proof of facts or circumstances by direct evidence from which you may then reasonably infer other related or connected facts which naturally and logically follow according to the common experience of mankind.

**{¶28}** "To infer or to make an inference is to reach a reasonable conclusion of fact which you may, but are not required to, make from other facts that were established by direct evidence. Whether an inference is made rests entirely with you.

**{¶29}** "So if you were to go out to Boardman Street - - this is Boardman Street on the side here. In fact, my office used to be right there at 20 West Boardman Street. * * * But all along Boardman Street are parking meters. If you had someone come into the courtroom and tell you that they walked out to Boardman Street and they saw some parking meters there, that the glass was broken and shattered by the base of the parking meter, and a couple of coins laying by the parking meter, and some guys was running down the street with a hammer in his hand, and a fistful of coins, the question would be asked whether or not anyone saw that person break into the parking meters, and the answer would be no. But you could still logically, reasonably, and legally conclude that that person running down the street with the hammer and the fistful of coins was the guy that broke into the parking meters and

took the money from the parking meters. That's how you use circumstantial evidence, if you choose to make an inference." (Tr. 257-59).

**{¶30}** In this assignment of error, appellant contends that the court's jury instruction on circumstantial evidence was in error. Not only does appellant allege the instruction, which his trial counsel failed to object to, was in error, he contends that it was a structural error. Appellant argues that the court's example mirrored the evidence received by the jury. He asserts that the example given by the court was so analogous to the evidence that the court basically told the jury that the circumstantial evidence provided in this case was sufficient to identify appellant and convict him.

**{¶31}** Appellant did not object to the jury instruction. Absent plain error, the failure to object to a jury instruction constitutes a waiver of the issue on appeal. *State v. Underwood* (1983), 3 Ohio St.3d 12, at the syllabus; Crim.R. 30. Plain error should be invoked only to prevent a clear miscarriage of justice. Id. at 14. Plain error is one in which but for the error, the outcome would have been different. *State v. Long* (1978), 53 Ohio St.2d 91, 97.

**{¶32}** Appellant asserts that this assignment of error should be reviewed for structural error. A structural error is characterized by the entire trial from beginning to end being clearly affected. *State v. Alexander*, 7th Dist. No. 03-CA-789, 2004-Ohio-5525, at ¶27, citing *State v. Rector*, 7th Dist. No. 01-AP-758, 2003-Ohio-5438, at ¶11 and *Arizona v. Fulminante* (1991), 499 U.S. 270, 309-10. "'Structural error is a constitutional deprivation which affects the framework of the whole trial rather than simply an error in the trial process itself.'" *Alexander*, at ¶27, quoting *Rector*, at ¶11. Structural error affects a defendant's substantial rights, even absent a showing of prejudice, and therefore automatically requires reversal. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, at ¶53.

**{¶33}** Appellant contends that a structural error analysis applies here in place of a plain error analysis. But these two analyses do not present "either or" options. Quoting the United States Supreme Court, the Ohio Supreme Court observed that the fact that an error may be structural does not preclude a plain error analysis:

**{¶34}** "'Rule 52(a) of the Federal Rules of Criminal Procedure, which governs direct appeals from judgments of conviction in the federal system, provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Although this Rule by its terms applies to *all* errors where a proper objection is made at trial, we have recognized a limited class of fundamental constitutional errors that "defy analysis by 'harmless error' standards." *Arizona v. Fulminante,* 499 U.S. 279, 309 [111 S.Ct. 1246, 1265, 113 L.Ed.2d 302, 331] (1991); see *Chapman v. California,* 386 U.S. 23 [87 S.Ct. 824, 827-828, 17 L.Ed.2d 705, 710] (1967). Errors of this type are so intrinsically harmful as to require automatic reversal (*i.e.,* "affect substantial rights") without regard to their effect on the outcome. For all other constitutional errors, reviewing courts must apply Rule 52(a)'s harmless-error analysis and must "disregar[d]" errors that are harmless "beyond a reasonable doubt." *Id.,* at 24 [87 S.Ct. at 828, 17 L.Ed.2d at 711].

**{¶35}** "'* * *

**{¶36}** "'We have recognized that "most constitutional errors can be harmless." *Fulminante, supra,* at 306 [111 S.Ct. at 1263, 113 L.Ed.2d at 329]. '[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutiona[l] errors that may have occurred are subject to harmless-error analysis.' *Rose v. Clark,* 478 U.S. 570, 579 [106 S.Ct. 3101, 3106, 92 L.Ed.2d 460, 471] (1986)." *State v. Hill* (2001), 92 Ohio St.3d 191, 196-97, quoting *Neder v. United States* (1999), 527 U.S. 1, 7-9.

**{¶37}** In examining the jury instructions we must review the court's charge as a whole, not in isolation, in determining whether the jury was properly instructed. *State v. Burchfield* (1993), 66 Ohio St.3d 261, 262.

**{¶38}** Appellant contends that the trial court's example of circumstantial evidence was improper because it was analogous to the facts of the case. This simply is not the case. In the trial court's example, the offender was identified solely based on the circumstantial evidence presented. This case presented the exact opposite scenario. Here appellant was not identified by circumstantial evidence.

Instead, we have eyewitness testimony from the victim himself identifying appellant as the man who shot him. The court's instruction to the jury was not an error at all, let alone an error that permeated the entire trial. Thus, there was no structural error.

**{¶39}** Likewise, because the court did not err in instructing the jury, appellant cannot demonstrate prejudice and, consequently, cannot demonstrate plain error.

**{¶40}** Accordingly, appellant's second assignment of error is without merit.

**{¶41}** Appellant's third assignment of error states:

**{¶42}** "DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY ARTICLE I § 10 OF THE CONSTITUTION OF THE STATE OF OHIO AND BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES BY REASON OF COUNSEL'S CUMULATIVE FAILURES TO ADVOCATE DEFENDANT-APPELLANT'S CAUSE AND TO BRING TO BEAR SUCH SKILL AND KNOWLEDGE AS WOULD RENDER CONFIDENCE IN THE FAIRNESS OF DEFENDANT-APPELLANT'S TRIAL AND ITS RESULTING VERDICT."

**{¶43}** Appellant argues that his trial counsel was ineffective based on five different claims, which we will separately address.

**{¶44}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, at paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley,* 42 Ohio St.3d at paragraph three of the syllabus.

**{¶45}** Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun* (1999), 86 Ohio St.3d 279, 289. In Ohio, a licensed attorney is presumed competent. Id.

{¶46} First, appellant argues that his counsel failed to object to two non-responsive answers by Detective Rusnak that cast his character in a bad light. To one question during cross examination, Detective Rusnak added, without solicitation, that he once arrested appellant for gun possession. (Tr. 135). To another question on re-cross, Detective Rusnak indicated that the gun was stolen and that appellant possessed it along with some crack cocaine. (Tr. 145).

{¶47} Appellant testified in his own defense. And before testifying regarding his alibi and asserting his innocence, counsel elicited testimony from appellant regarding his background. This necessarily included appellant's past guilty pleas to gun and drug charges. (Tr. 189). It was likely counsel's strategy to be open and honest with the jury about appellant's past. Counsel could have used appellant's prior guilty pleas as a way to demonstrate that appellant is the type of person who owns up to his bad acts, if in fact he is guilty. Thus, since he knew that this information was going to come out in appellant's testimony, it is reasonable to conclude that counsel did not take issue with Detective Rusnak's testimony so as not to call particular attention to these facts. This falls within the realm of trial strategy. We will not second guess trial counsel's tactics. Trial tactics are generally not subject to question by a reviewing court. *State v. Fryling* (1992), 85 Ohio App.3d 557, 562.

{¶48} Second, appellant points out that during Detective Rusnak's cross examination his counsel asked the detective to reference a BCI firearms analysis report in order to identify the type of firearm used to shoot Weaver. (Tr. 135-36). Detective Rusnak read from the report and stated the suspected firearm used was a Glock 9mm semi-automatic pistol. (Tr. 136-37). Appellant notes that the state did not call any BCI witnesses to testify regarding the firearm report, and therefore this evidence would not have been brought to the jury's attention but for counsel's introduction of it. Appellant claims this evidence was prejudicial to him.

{¶49} What appellant does not point out is that the information his counsel elicited was potentially helpful to his case. In addition to testifying that a Glock was used to shoot Weaver, Detective Rusnak also testified that he had confiscated a

Glock from appellant sometime prior to the shooting. (Tr. 145). Appellant's counsel may have been trying to show that appellant no longer owned the type of gun used to shoot Weaver. Once again, this was a matter of trial strategy.

{¶50} Third, appellant contends his counsel was ineffective for eliciting Detective Rusnak's testimony that the type of gun which appellant had illegally possessed in the past was a Glock. (Tr. 143). He also asserts here that counsel was ineffective for failing to object to questions posed to him on cross examination by the prosecutor asking if he supported his children and bringing to light the fact that appellant had driver's license suspensions for failure to pay child support. (Tr. 200-201). And appellant argues that his counsel should have objected to questions by the prosecutor asking him particulars about his prior gun conviction. (Tr. 202).

{¶51} Firstly, while Detective Rusnak testified he arrested appellant for having a Glock in the past, he also testified that this gun was not returned to appellant. (Tr. 145). This evidence, therefore, tends to help appellant's case by showing that he did not have this gun in his possession when Weaver was shot. Secondly, as to the child support questions and the questions about his prior gun conviction, appellant brought these issues to light himself when he testified as to his criminal background and stated that he pays child support. (Tr. 187-90). Thus, the trial court would not have sustained an objection to the prosecutor's questions regarding these issues since appellant opened the door during his direct testimony.

{¶52} Fourth, appellant asserts his counsel was ineffective for failing to object during the state's closing argument to the following comments:

{¶53} "You heard Officer Rusnak testify that he sent those shell casings to BCI, the state laboratory, that they couldn't make an exact match but they were able to identify based on markings on the shell from the hammer, from the pin, the firing pin. That was from 9mm, probably a Glock.

{¶54} "Ladies and gentlemen, handguns of that quality are like a car. You grow up. We like Fords. We like GM. We like Pontiacs. Well, if you got your druthers, if you are a Glock man and you go to prison with a Glock, chances are if

you are going to try to kill somebody, you are going to use a Glock. The shells indicated a Glock. His testimony -- Armstrong's testimony was when I had the drugs and that gun, it was a Glock. Stolen from Miller Rod and Gun. Stolen from Miller Rod and Gun. August of this year." (Tr. 234-35).

{¶55} Parties are generally afforded wide latitude in closing arguments. *State v. Spivey* (Jan. 13, 1997), 7th Dist. No. 89-CA-172; *State v. Smith* (1984), 14 Ohio St.3d 13, 14. Whether the prosecutor's inference was a reasonable one to make is debatable. But while the prosecutor's comment may have been inappropriate, it was not prejudicial especially in light of the fact that this was an isolated comment in an otherwise proper closing argument. Additionally, counsel may have still been relying on the fact that Detective Rusnak testified he did not return the Glock to appellant and the following inference that, therefore, appellant no longer owned a Glock.

{¶56} Finally, appellant claims his counsel was ineffective for his failure to object to the jury instruction on circumstantial evidence as addressed in his second assignment of error.

{¶57} As discussed above, the court's circumstantial evidence instruction was not in error nor did it prejudice appellant. Therefore, counsel was not ineffective for failing to object to it.

{¶58} Based on the foregoing, appellant has not demonstrated any instances of ineffective assistance of counsel. Accordingly, appellant's third assignment of error is without merit.

{¶59} For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, .J., concurs.

DeGenaro, J., concurs.