[Cite as *State v. Weger*, 2022-Ohio-2204.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 2021 CA 00062 |
| JAMIE L. WEGER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:　　Appeal from the Licking County Municipal
　　　　　　　　　　　　　　　　　　　Court, Case No. 21 CRB 00221


JUDGMENT:　　　　　　　　　　　Affirmed

DATE OF JUDGMENT ENTRY:　　June 27, 2022


APPEARANCES:


For Plaintiff-Appellee　　　　　　　　For Defendant-Appellant

TRICIA MOORE　　　　　　　　　　ANDREW T. SANDERSON
Licking County Law Director　　　　　73 North Sixth Street
City of Newark　　　　　　　　　　　Newark, Ohio 43055

J. MICHAEL KING
Licking County Assistant Law Director
City of Newark
40 Wet Main Street – Fourth Floor
Newark, Ohio 43055

*Hoffman, P.J.*

{¶1}    Defendant-appellant Jamie L. Weger appeals her conviction and sentence entered by the Licking County Municipal Court, on one count of child endangering, in violation of R.C. 2919.22, a misdemeanor of the first degree, following a bench trial. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    Newark Police arrested Appellant on February 20, 2021, after her 9-year-old autistic son was found outside, unattended, in below freezing temperatures.    On February 22, 2021, a complaint was issued against Appellant, charging her with one count of child endangering.    Appellant entered a plea of not guilty to the charge at her arraignment on February 22, 2021.

{¶3}    After five continuances, the matter proceeded to bench trial on July 20, 2021.   The trial court issued an App. R. 9(C) statement of evidence after "a thorough search" of the court's audio and video recording system "failed to locate any record of the trial."  December 17, 2021 Judgment Entry of Settlement and Approval.   The following facts are taken therefrom.

{¶4}    Prior to commencing the bench trial, the trial court asked Appellant if she wished to be represented by counsel.   Appellant indicated she would like to proceed without counsel.   After the trial court discussed the dangers of self-representation with Appellant, the trial court asked Appellant if she would like to proceed without the benefit of counsel.   Appellant "confirmed [her desire] to resolve the case via a bench trial without the assistance of counsel."  *Id.* at ¶ 1.   Thereafter, Appellant executed a written waiver of counsel.  The trial court confirmed Appellant had read and understood the waiver prior to signing it.  The waiver was filed prior to the trial court commencing the trial.

{¶5} Officer Stevens of the Newark Police Department testified he responded to the scene at approximately 2:30 p.m. on February 20, 2021, and found a child, Aidan. Aidan's hands and face were red and the child complained of being cold. Officer Stevens placed Aidan in his cruiser to warm him up. Officer Stevens asked Aidan where he lived, but Aidan did not know his address. An adult at the scene, who was familiar with the child and his family, provided information which led officers to 103 Dewey Avenue.

{¶6} Officers proceeded to the address. Officer Stevens remained in the cruiser with Aidan while Officer Cortez spoke to the resident at 103 Dewey Avenue. The resident advised Officer Cortez Aidan did not live at the residence, but she knew his mother, who was later identified as Appellant, and could reach her. Appellant arrived 45 minutes later and, according to Officer Stevens, did not seem concerned about the child's welfare. Officer Stevens noted it was approximately 25 degrees at the time, and there was snow on the ground. Officer Stevens learned Aidan was 9 years old and was autistic.

{¶7} The individual who made the 9-1-1 call stated she almost hit Aidan with her vehicle because the child was chasing a truck down the road. Officers responded to the scene within 15-20 minutes after receiving the 9-1-1 call. Officer Stevens recalled, when Appellant finally arrived, she and her daughter drove past his cruiser and walked down the sidewalk towards the officers.

{¶8} When Officer Stevens asked Appellant if she knew where her son was, Appellant seemed dumbfounded and responded she did not know. Officer Stevens asked Appellant if she knew where Aidan was supposed to be. Appellant answered she did not know exactly at which house he should be. Officer Stevens told Appellant she was the mother and was supposed to know where her son was at all times. Officer Stevens

arrested Appellant, instructed Appellant's daughter to take Aidan, and contacted Child Protective Services ("CPS"). CPS placed Aidan in the temporary custody of Appellant's daughter.

{¶9} Officer Cortez identified a picture of Aidan as the child in question. Officer Cortez also identified Appellant in the courtroom as the mother of the child. The officer stated he arrived at the scene at approximately 2:30 p.m. on February 20, 2021, and spoke with the individual who had called dispatch. Thereafter, he proceeded to 103 Dewey Avenue and spoke with Sydney Pepe and Victoria Knowles, who advised him Appellant used to live at the address, but did not currently live there. Officer Cortez asked Knowles to have Appellant call him regarding what she wants the officers to do with Aidan. Shortly thereafter, Appellant called and informed Officer Cortez she would be there as soon as possible. When Appellant arrived in the area, she drove past the police vehicles rather than stopping. Appellant and her daughter then walked down the sidewalk towards the officers. Appellant admitted she did not look for Aidan from 12:30 p.m. to 3:30 p.m., and did not know where he was. Appellant indicated she lived approximately two miles away from Dewey Avenue.

{¶10} On cross-examination, Officer Cortez stated Aidan was unable to tell the officer where he lived. Officer Cortez repeated he instructed Knowles to have Appellant call the officers. When Appellant asked Officer Cortez if he told her she did not deserve to have any children, he responded he did not recall, but it was possible as he was upset by the situation.

{¶11} Officer O'Neal identified a picture of Aidan as the child in question. Officer O'Neal also identified Appellant in the courtroom as the mother of the child. When Officer

O'Neal spoke to Aidan, he asked the child where he and his family were staying. Aidan could not remember, but an onlooker informed the officer the family was staying at 103 Dewey Avenue. Officer O'Neal noted Appellant did not seem concerned and blamed Aidan for the situation. After Appellant was placed under arrest, Officer O'Neal left the scene to respond to another call.

{¶12} Appellant did not cross-examine Officer O'Neal. Thereafter, the state rested.

{¶13} Appellant called her boyfriend, Ron Warfle, to testify on her behalf. Warfle testified, on the day of the incident, Appellant arrived at the home of his sister, Victoria Knowles, to help look for an apartment. Appellant then took a nap because her daughter needed a ride to work. When Warfle and Appellant left, they asked Knowles to look after Aidan if he returned to her residence. Warfle acknowledged they did not see or know when Aidan left. Warfle recalled the officers treated Appellant with disrespect. He further stated Appellant's daughter was driving the truck when they arrived at the scene.

{¶14} On cross-examination, Warfle confirmed Appellant had custody of Aidan. Warfle indicated Aidan had been gone since 9:30 a.m., and from that point until they arrived at the officers' location, no one had looked for Aidan.

{¶15} Appellant testified in her own defense. She stated she arrived at Knowles' residence at approximately 7:30 a.m. to help find an apartment. Appellant explained, after she arrived, she needed to rest before driving her daughter to work. Appellant left Knowles' residence to take her daughter to work. Appellant received a phone call from Knowles informing her she (Appellant) needed to come back because the police had Aidan. Appellant called the officers and was instructed to hurry because they were not

her babysitters. Appellant indicated her daughter was driving and she drove past the officers and parked the vehicle. Appellant and her daughter walked back towards the officers. Appellant recalled the officers asked her why she was not concerned about her son or his whereabouts. Appellant informed the officers Aidan was autistic and he was supposed to be at one of two houses. Appellant added the officers told her she was unfit to be a mother and placed her under arrest.

{¶16} On cross-examination, Appellant recalled the temperature on February 20, 2021, was 25 degrees. Appellant knew Aidan had gone outside to play at 9:30 a.m., and she had instructed him to return by noon. Appellant admitted Aidan had not returned by 2:00 p.m., but she had things to do so she left. When shown a picture of Aidan, Appellant acknowledged it accurately depicted the clothing Aidan was wearing that day, but added he had long johns underneath his clothing which could not be seen in the picture. Upon conclusion of her cross-examination, Appellant rested her defense.

{¶17} The state did not present any rebuttal evidence. Neither party made closing arguments.

{¶18} The trial court found Appellant guilty and sentenced her to 180 days in jail with 120 days suspended and two days credit for time served. The trial court placed Appellant on probation for a period of one year. As a condition of her probation, Appellant was required to successfully complete a parenting skills class.

{¶19} The trial court memorialized Appellant's conviction and sentence via Judgment Entry of Conviction filed July 20, 2021.

{¶20} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:

I. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL HEREIN.

II. THE CONVICTION OF THE DEFENDANT-APPELLANT WAS OBTAINED WITHOUT SUFFICIENT EVIDENCE BEING PRESENTED TO ESTABLISH EACH AND EVERY ELEMENT OF THE OFFENSE IN QUESTION.

I

{¶21} In her first assignment of error, Appellant asserts she was denied the effective assistance of counsel. Specifically, Appellant asserts the trial court failed to properly protect the proceedings by allowing her to proceed without counsel.

{¶22} A defendant's right to counsel during critical stages of the prosecution is guaranteed by the Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, and by Article I, Section 10, of the Ohio Constitution. *Gideon v. Wainwright,* 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227. The right to counsel "implicitly embodies a 'correlative right to dispense with a lawyer's help.' " *Martin*, supra at ¶ 23 (Citation omitted). The right to represent oneself "is thwarted when counsel is forced upon an unwilling defendant, who alone bears the risks of a potential conviction." *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 26 (Citation omitted).

{¶23} The United States Supreme Court and the Supreme Court of Ohio have recognized a criminal defendant's right to defend himself at trial without counsel when the

defendant knowingly, intelligently, and voluntarily chooses to do so. See, *Faretta v. California* , 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. Gibson*, 45 Ohio St.2d 366, 377, 345 N.E.2d 399 (1976). In Ohio, Crim.R. 44 governs the procedure for the appointment of counsel and the waiver thereof. The waiver of counsel "shall be in open court and the advice and waiver shall be recorded." Crim.R. 44(C).

{¶24} This matter was scheduled and rescheduled for bench trial at least 5 times. On April 12, 2021, prior to one of the scheduled trial dates, Appellant executed a written waiver of counsel.  Thereafter, the matter was continued three more times.  Via Judgment Entry filed June 15, 2021, the trial court granted Appellant's motion to continue, adding, "No further continuances of your trial/hearing will be granted."  June 15, 2021 Judgment Entry.   Appellant claims this admonition "made it clear to [Appellant]. . . no continuance would be granted to allow her time to obtain counsel."  Brief of Appellant at 6.  We find the record belies Appellant's assertion.

{¶25} The record reveals, notwithstanding this admonition, prior to commencing the bench trial on July 20, 2021, the trial court again advised Appellant of her right to counsel.  Appellant again waived that right and executed a written waiver, which was time stamped and filed on July 20, 2021, prior to the presentation of evidence.  Appellant concedes the "waiver was "executed in a knowing, intelligent and voluntary manner."  *Id*. There is nothing to establish the trial court would not have permitted Appellant to obtain counsel had she made such a request.

{¶26} Additionally, Appellant argues "the trial court not only allowed inadmissible evidence to be admitted, but relied upon the same in reaching its conclusion that [Appellant] should be found guilty of the offense charged.  *Id*. at 6-7.  Appellant submits,

"The failure of the trial court to protect the constitutional rights to a fair trial herein of [Appellant] is tantamount to a denial of her rights to both due process and the effective assistance of trial counsel." *Id*. at 7.

**{¶27}** We can assume Appellant is taking issue with the testimony of the officers relative to the information they received from individuals at the scene. The information the officers discovered as a result of their conversations with the individual who called 9-1-1 and the women at 103 Dewey Avenue was merely part of their investigation, not offered to prove the truth of the matter asserted; therefore, not hearsay. See, *State v. Bound,* 5th Dist. Guernsey No. 03 CA 21, 2004-Ohio-6530, ¶ 34.

**{¶28}** Based upon the foregoing, we find Appellant was not denied the effective assistance of counsel.

**{¶29}** Appellant's first assignment of error is overruled.

II

**{¶30}** In her second assignment of error, Appellant contends her conviction was based upon insufficient evidence. We disagree.

**{¶31}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶32}** Appellant was convicted of one count of child endangering, in violation of R.C. 2919.22, which provides, in pertinent part:

No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

**{¶33}** Appellant argues, while "the record demonstrates the child was found in a situation that was inappropriate," the record lacks "any indication of how the child got into that situation." Brief of Appellant at 10. We disagree with Appellant's interpretation of the evidence.

**{¶34}** At approximately 2:00 p.m. on February 20, 2021, officers were dispatched in response to a call from a motorist who almost hit a child with her vehicle because the child was chasing a truck down the road. When the officers arrived at 2:30 p.m., they found the child. His hands and face were red and he complained of being cold. The temperature was 25 degrees and there was snow on the ground Officer Stevens placed the child in his cruiser to warm him up. The child did not know his address.

**{¶35}** The officers were directed to 103 Dewey Avenue, where they spoke with Sydney Pepe and Victoria Knowles. Knowles indicated she knew Appellant and could contact her. Officer Cortez asked Knowles to have Appellant call him. Appellant called and informed Officer Cortez she would be there as soon as possible. Appellant arrived

45 minutes later. When the officers asked Appellant if she knew where her son was, Appellant seemed dumbfounded and responded she did not know. Appellant was asked if she knew where Aidan was supposed to be. Appellant answered she did not know exactly at which house he should be.

**{¶36}** Appellant admitted Aidan left at 9:30 a.m. and she instructed him to return by noon. When the child was not back by 2:00 p.m., she left because she had "things to do." Appellant acknowledged she did not look for Aidan from 12:30 p.m. and 3:30 p.m., and did not know where he was. Appellant's boyfriend testified Appellant had asked Knowles to look after the child "if he came back."

**{¶37}** The record clearly establishes Appellant was unaware of her son's whereabouts for approximately 5 hours. We find, given the frigid temperatures of the day of the incident and the fact the child was 9 years old and autistic, Appellant created a substantial risk to Aidan's safety.

**{¶38}** Appellant also argues the state failed to establish venue. We disagree.

**{¶39}** "Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant." *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983), citing *State v. Draggo* (1981), 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 [19 O.O.3d 294]. "The standard of proof is beyond a reasonable doubt, although venue need not be proved in express terms so long as it is established by all the facts and circumstances in the case." *Id.*, citing *State v. Dickerson* (1907), 77 Ohio St. 34, 82 N.E. 969, paragraph one of the syllabus.

**{¶40}** In its December 17, 2021 Judgment Entry of Settlement and Approval, the trial court noted the the officers the state called as witnesses were "employed by the

Newark Division of Police." *Id.* at footnote 1, p. 1. Because the record reflects the officers were employed by Newark Division of Police and they were dispatched to a specific area then proceeded to Dewey Avenue, we find there was circumstantial evidence to establish venue.

**{¶41}** Based upon the foregoing, we find Appellant's conviction was not based upon insufficient evidence.

**{¶42}** Appellant's second assignment of error is overruled.

**{¶43}** The judgment of the Licking County Municipal Court is affirmed.

By: Hoffman, P.J.

Wise, John, J. and

Delaney, J. concur